IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| v. | § | No. 4:21-CR-253 |
| | § | Judge |
|  | § | |
| SEGUN ADEOYE (13) | § | |

**FILED**

SEP 09 2021

Clerk, U.S. District Court
Eastern District of Texas

Indictment
Page 1 of 17

Case 4:21-cr-00253-ALM-BD   Document 73   Filed 09/09/21   Page 2 of 17 PageID #: 286



§
§
§
§
§
§
§
§
§

## INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

                                  Violation: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

1.    From in or around January 2017, and continuing through the date of this Indictment, in the Eastern District of Texas and elsewhere, the defendants,



along with others both known and unknown to the Grand Jury, did knowingly and willfully conspire to commit wire fraud in violation of Title 18 United States Code Section 1343.

## Overview of the Conspiracy

2.      The defendants used a multitude of fraudulent schemes to unlawfully obtain money from their victims, including online romance scams, business email compromise and investor fraud, and unemployment insurance fraud.  The defendants not only coordinated how to exact money from their victims, but also how to disguise, disburse, and launder that money once they successfully defrauded their victims.  Through their fraudulent conduct, the defendants obtained at least $17 million dollars from individual victims, companies, and government entities located across the world.  Because the fraudulent activity occurred using the internet, the mail services, and domestic and international banking systems, the defendants transmitted and caused to be transmitted wire transmissions affecting interstate and foreign commerce.

## Purpose of the Conspiracy

3.      It was the general purpose of the conspiracy for the defendants to unlawfully and unjustly enrich themselves and to send money to co-conspirators located overseas by means of materially false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Conspiracy

4.      The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among others, the following:

    a. The defendants and their co-conspirators communicated with each other by phone, Whatsapp text message, in-person meetings, and email regarding their fraudulent conduct;

    b. The defendants and their co-conspirators used code words and dialects to

      disguise the true intentions and nature of their schemes;

c.   The defendants and their co-conspirators employed a variety of deceptive schemes, including romance scams, business email compromises and investor fraud, and unemployment insurance fraud;

d.   The defendants and their co-conspirators requested and coerced money from their victims using false identities and false representations;

e.   The defendants and their co-conspirators received money from victims in various forms, including wire transfers, cash, and cashier's checks;

f.   The defendants and their co-conspirators used hundreds of financial accounts, oftentimes in a business name or another individual's name, for the purpose of depositing, withdrawing, and transferring victim money;

g.   The defendants and their co-conspirators forced unwilling individuals, including employees at financial institutions, to open accounts, create businesses, and deposit and withdraw money;

h.   The defendants and their co-conspirators used virtual private networks (VPNs) and other similar tools to mask the locations from which they were conducting their fraudulent activity;

i.   The defendants and their co-conspirators created and registered domestic and international businesses to legitimize their fraud;

j.   The defendants and their co-conspirators shared business and residential addresses with each other to coordinate mailings and the receipt of victim funds;

k.   The defendants and their co-conspirators used victim money for personal expenses;

l.   The defendants and their co-conspirators sent victim money to bank accounts, co-conspirators, and businesses located in Africa and Asia, including but not limited to, Hatford Resources Nigeria, Sedala Ventures, Temrex Nigeria Limited, Jedi Recycling, Foshan City Gaoming Sunnaise Plastics, and Xiamen Heron Seafood, and Kyokuyo Company;

m.   The defendants and their co-conspirators, after exchanging money in the United States, would engage in parallel transactions with foreign currency such as

   Nigerian Naira;

n.  The defendants and their co-conspirators lied regarding their marriage and immigration status so that they could illegally stay in the United States to further their scheme; and

o.  The defendants and their co-conspirators caused wire transmissions that affected interstate and foreign commerce.

### Representative Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy, the following acts, among others, were committed in the Eastern District of Texas and elsewhere:

### The Communications

5.  The defendants and their co-conspirators communicated via Whatsapp, in-person meetings, phone calls, and text messages. During these discussions, the defendants and their co-conspirators discussed, among other topics, the timing of deposits and transfers, victim information, account identifiers, and evading law enforcement detection. For instance:

a.  On or about September 13, 2020, a co-conspirator told ▉ "Older women. All this fake love matter…They will put it there and they get the women to get out the money. These are different ways and they are new things." On or about September 15, 2020, while discussing sham businesses with another co-conspirator, ▉ boasted that she did extensive "419" (also known as Nigerian letter fraud).

b.  On or about September 7, 2020, ▉ and ▉ discussed opening bank accounts and using "fishing" as a cover for their fraudulent activity. During the conversation, ▉ stated that once he opened the account, he would "explain to the bank right there that [I] am going to be doing a lot of foreign transaction so you people are aware, [I] am going to be doing some incoming and outgoing transfers." ▉ then agreed to tell the bank that the transactions will be related to "fish."

    c. On or about October 6, 2020, ▮▮▮ told ▮▮▮ that they "just sent 50 thousand for fish." ▮▮▮ affirmed interest in the fraudulent enterprise by saying: "I really want to venture into the side of making this bureau exchange thing like a constant thing, not something I just do from time to time."

    d. On or about October 14, 2020, ▮▮▮ explained to ▮▮▮ how funds were not being disbursed because of bank freezes and charges. ▮▮▮ requested ▮▮▮ send her ▮▮▮ account information as an alternative destination bank account and further asked if money can be sent to ▮▮▮ and ▮▮▮ and moved from there.

    e. On or about May 5, 2020, ▮▮▮ texted and provided his bank account information to a co-conspirator. On or about May 15, 2020, the co-conspirator forwarded ▮▮▮ bank account information to ▮▮▮ for purposes of receiving money from a victim with initials S.H. On or about May 17, 2020, after receiving the victim funds, ▮▮▮ texted S.H.'s identification information back to the co-conspirator so that ▮▮▮ could identify the source of the deposit in his bank account.

    f. On or about May 13, 2020, a co-conspirator texted ▮▮▮ asking for bank accounts to "drop 20-30k a day." ▮▮▮ responded by asking the co-conspirator to provide a percentage of the proceeds. On or about May 15, 2020, the co-conspirator texted ▮▮▮ that the deposits would be tied to unemployment fraud and that the percentages would be "50/50." ▮▮▮ responded that same day, "Ok I go send to my guy."

    g. On or about April 23, 2019, in the Eastern District of Texas, ▮▮▮ and ▮▮▮ met with others in the Eastern District of Texas to discuss the logistics of business email compromise schemes, percentage cuts, and account transfers. On or about July 16, ▮▮▮ requested bank account information to transfer funds obtained from an upcoming business email compromise scheme. In or around September 2019, when asked about the status of the fraudulent funds, ▮▮▮ responded that he acquired $301,000 from the victim company but that the transaction was blocked by the financial institution.

    h. On or about September 11 and 18, 2018, at approximately 8 PM on both dates, ▮▮▮ and ▮▮▮ met for a few minutes in the parking lot of a gas station located in McKinney, Texas, in the Eastern District

of Texas. On June 8, 2020, ▉▉▉▉ explained to a co-conspirator that he planned to pay off debts to ▉▉▉▉ through "transactions."

i. Between in or around May 2020 to September 2020, ▉▉▉▉ asked a bank employee to register a business name, open multiple bank accounts, and help move money through those accounts. On or about September 28, 2020, when discussing a specific BBVA bank account, ▉▉▉▉ instructed the employee to withdraw "9800 or 9900" and not do "10k again" in order to avoid detection.

## The Fraudulent Schemes

### Romance Fraud Targeting Individuals

6. During the course of the conspiracy, the defendants and their co-conspirators fabricated identities and back stories to lure victims to send money. These included lies about who the victim was actually communicating with, lies about their interest or friendship with the victim, and lies about why the victim needed to send money. For example, one victim with initials J.R. was approached through an online dating site by an individual named "Russell Hall." Over the course of five months, Hall represented to J.R. that he was romantically interested in J.R., that he was an international civil engineer, and that his work was taking him to South Africa. Eventually, Hall requested J.R. send him $50,000 for unanticipated "port fees" related to his job, and then asked for another $80,000 to pay for new equipment for his work. All these representations were false.

7. Acting on these lies, J.R. and other similarly situated victims sent money—via cash, cashier's check, wire, or other means—to the defendants or financial accounts controlled by the defendants and their co-conspirators. Once in receipt of the victim

funds, the defendants engaged in a series of financial transactions to pay each other, transfer money internationally, and disguise the source of their proceeds. For instance:

a. On or about October 25, 2019, victim J.R. wired $80,000 to ▮▮▮ and ▮▮▮ Bank of America business account ending in 4369 (BOA 4369). Between October 28 and October 31, 2019, ▮▮▮ and ▮▮▮ withdrew approximately $56,000 in cash from the same BOA 4369 account. On or about October 30, 2019, ▮▮▮ notarized and executed a document with the bank assuming responsibility for the $80,000 wire transfer from J.R. On or about November 19, 2019, ▮▮▮, Sandra's husband, made two cash deposits totaling approximately $52,150 into his own Regions Bank account ending in 2452. Two days later, on or about November 21, 2019, ▮▮▮ transferred approximately $52,000 to a Thai bank account in the name of "H V Plas Co." On or about May 15, 2020, again using victim funds, ▮▮▮ withdrew three cashier's checks payable to **Segun Adeoye** totaling approximately $43,000. On or about May 27, 2020, **Adeoye** wired $43,000 from his Chase Bank account ending in 0603 to a Japanese bank account in the name of "Kyokuyo Co. Ltd."

b. On or about November 24, 2017, a victim with initials S.M. wired $15,000 to ▮▮▮ Bank of America account ending in 6298 (BOA 6298). Three days later, on or about November 27, 2017, ▮▮▮ wired $2,650 from his BOA 6298 account to ▮▮▮ JP Morgan Chase account ending in 6870. On or about February 9, 2021, the same victim with initials S.M., following instructions from the same alleged love interest, wired $970 to ▮▮▮ Wells Fargo account ending in 3231.

c. On or about December 9, 2019, a victim with initials M.W. wired approximately $2,350 to ▮▮▮ JP Morgan Chase account ending in 0790. Approximately two days later, on December 11, 2019, $2,000 of money orders were issued to ▮▮▮ and ▮▮▮ Bank of America business account ending in 6138, under the business name "Celdon Group LLC."

d. On or about July 15, 2020, a victim with initials R.D. wired $48,000 to ▮▮▮ business Wells Fargo account ending in 2095. Between on or about July 15 and 18, 2020, ▮▮▮ purchased approximately $47,769 of cashier's checks payable to Neco Corporation, a business in the name of ▮▮▮ and ▮▮▮. Approximately one month later on

August 20, 2020, ▮ and ▮ wired $47,719 to a Japanese bank account in the name of "Kyokuyo Co. Ltd."

e. On or about January 29, 2020, a victim with initials T.W., wired $9,000 to ▮ First Service Credit Union account ending in 6850. On or about January 30 and 31, 2020, ▮ sent approximately $21,000 to ▮ using foreign bank accounts set up in Nigeria. On or about February 10, 2020, ▮ deposited $15,000 of cash into ▮ Bank of America account ending in 6723. On or about October 5, 2020, ▮ transferred $50,000 from his Bank of America account ending in 6723 to a Chinese account in the name of "Seapride Frozen Food Co. Ltd."

f. On or about June 18, 2018, a victim with initials B.W. wired $40,000 to ▮ One Bank business account ending 7051. On or about June 22 and 26, 2018, the same victim B.W. sent $40,000 to ▮ Bank of America business account ending in 3701.

**Corporate Fraud Targeting Businesses and Investors**

8. In addition to defrauding individuals through romance scams, the defendants and their co-conspirators also obtained money through schemes targeting companies and businesses. In one instance, a business investor with initials M.G. entered into a contract for payments toward jet fuel storage related to Shelfneftegaz Refinery. Although the refinery existed and the business purpose appeared legitimate, M.G.'s company received an invoice and wire instructions for payments from a financially fraudulent and blacklisted entity operated by the defendants and their co-conspirators—OMSK Tank Farm.

9. Having fraudulently acquired funds from M.G. and other business investors, the defendants engaged in a series of financial transactions. For example:

a. On or about October 5, 2017 a business investor with initials R.P wired $30,000 to ▮ One business account ending 1706. On or about October 6, 2017, ▮ withdrew cashier's checks totaling $24,000 payable

to  who subsequently deposited it in  Comerica business bank account ending 0508.  Then, on or about October 24, 2017,  wired $24,500 from her Comerica account ending in 0508 to Temrex Nigeria Limited.

b. On or about January 22, 2018, a business investor with the initials M.G. wired $44,800 to  One business bank account ending 7599. Between on or about January 30 and February 1, 2018,  withdrew a cashier's check and wrote checks totaling $34,200 payable to  On or about February 2, 2018,  wired $24,850 from her JP Morgan Chase bank account ending in 1373 to a Nigerian bank account in the name of Temrex Nigeria Limited.

**Unemployment Insurance Fraud Targeting Government Funds**

10.     The defendants also targeted government funds earmarked for individuals who are unable to work, transitioning between jobs, or affected by the global pandemic. The defendants and their co-conspirators prepared and sent fraudulent applications to various state entities administering the unemployment insurance benefit programs. Believing that the applications were submitted by individuals who actually qualified for the program benefits, the government entities issued ACH deposits and prepaid debit cards to the defendants and co-conspirators, depositing funds in the listed bank accounts or mailing prepaid debit cards to the addresses listed on the applications.  Consistent with their other fraud schemes, the defendants engaged in a series of financial transactions once they obtained the government funds.

a. For instance, in or around July 2020, the City of Henderson, a municipality in Nevada, authorized Bank of America to send prepaid debit cards to various individuals whom they deemed eligible for unemployment insurance benefits. Between in or around July and August 2020, Bank of America accordingly sent prepaid debit cards to a residential address on Jupiter Road, in Allen, Texas, in the Eastern District of Texas, registered to  On multiple

occasions in August and September 2020, ▮ and nephew, ▮ cashed the prepaid debit cards at ATM machines located in the Eastern District of Texas. On or about August 5, 2020, ▮ sent multiple envelopes containing cash to ▮ and later, on or about September 4, 2020, ▮ sent approximately $35,000 to ▮

11. Because the defendants' scheme involved handling, receiving, and depositing money from victims in the United States, the defendants had to physically reside in the United States. However, several defendants did not obtain lawful status to reside as a permanent resident in the United States. Instead, the defendants and co-conspirators entered into unlawful and fraudulent marriages with United States citizens, lied on United States immigration forms, and overstayed government-issued visas.

12. In total, at least 100 victims—including individuals, businesses, and government entities— sent money to the defendants and their co-conspirators. As a result of the fraudulent conduct, these victims lost at least $17 million.

All in violation of 18 U.S.C. § 1349.

**Count Two**

                                        Violation: 18 U.S.C. § 1956(h)
                                        (Conspiracy to Commit Money
                                        Laundering)

13.    Paragraphs 1 through 12 of Count 1 of this Indictment are realleged and incorporated by reference as though fully set forth herein, as constituting and describing the defendants' fraudulent scheme.

14.    Beginning in or around January 2017 and continuing through the date of this Indictment, in the Eastern District of Texas and elsewhere, the defendants



did knowingly combine, conspire, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

    a. to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18 United States Code Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that

    while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

  b. to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18 United States Code Section 1343, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

All in violation of 18 U.S.C. § 1956(h).

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

1. The allegations contained in Count One and Count Two are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendant has an interest.

2. Upon conviction of any violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and, pursuant to 18 U.S.C. § 982, any proceeds or property, real or personal, involved in a violation of 18 U.S.C. 1956(h).

3. Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the ▮▮▮▮▮▮ property, or any portion thereof, as a result of any act or omission of the defendant:

 a. cannot be located upon the exercise of due diligence;

 b. has been transferred or sold to, or deposited with, a third party;

 c. has been placed beyond the jurisdiction of the court;

 d. has been substantially diminished in value; or

 e. has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described ▮▮▮▮▮ properties, including, but not limited to, any identifiable property in the name of the defendants.

4. By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

NICHOLAS J. GANJEI
ACTING UNITED STATES ATTORNEY

_____      _____
ASSISTANT UNITED STATES ATTORNEY      Date

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § § | **SEALED** <br><br> No. 4:21-CR- <br> Judge |
| v. | | |
| ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ <br> SEGUN ADEOYE (13) <br> ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ | | |

Indictment
Page 16 of 17



§  
§  
§  
§  
§  
§  
§  
§  
§  

## NOTICE OF PENALTY

### Count One

Violation: 18 U.S.C. § 1349, 1343  
(Conspiracy to Commit Wire Fraud)

Penalty: Imprisonment for a term not more than 20 years, a fine not to exceed $250,000.00, or both; if the violation affected a financial institution, then imprisonment for a term not more than 30 years, a fine not to exceed $1,000,000.00; or both imprisonment and a fine; a term of supervised release of not more than 5 years.

Special Assessment: $100.00

### Count Two

Violation: 18 U.S.C. § 1956(h)  
(Conspiracy to Commit Money Laundering)

Penalty: Imprisonment for a term not more than 20 years; a fine not to exceed $500,000 or twice the value of the property involved in the transaction, whichever is greater; or both imprisonment and fine; a term of supervised release of not more than 3 years.

Special Assessment: $100.00