IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES | § | |
| | § | |
| V. | § | No. 4:21-CR-253 (13) |
| | § | |
| SEGUN PATRICK ADEOYE | § | |

RESPONSE TO GOVERNMENT'S APPEAL OF MAGISTRATE COURT'S
ORDER OF RELEASE

**TO THE HONORABLE AMOS MAZZANT:**

Segun Adeoye, through undersigned counsel, files this Response to Government's Appeal of Magistrate Court's Order of Release. The Government has not satisfied its burden to show Dr. Adeoye poses a serious risk of flight or risk of obstructing justice. In support, we would show the Court the following:

### I.   PROCEDURAL HISTORY

On September 22nd, 2021, Dr. Segun Adeoye was arrested without incident in Kermit, TX while working an emergency room shift at the underserved Winkler County Hospital due to a doctor shortage in the area. He lives in the Houston, TX area. He was taken to Midland, TX for a Rule 5 hearing on September 23rd, 2021 in front of Magistrate Judge Ronald C. Griffin. The Government filed a paper form motion to detain and for a 3-day continuance but was not present for Dr. Adeoye's appearance. Dr. Adeoye was not assigned counsel nor advised of his right to retain counsel. Fed. R. Crim. P. 5(d)(1)(B). Dr. Adeoye then confirmed

1

he was indeed Segun Adeoye and was instructed by the Court to sign a form waiving his right to an identity hearing.

The Magistrate then immediately ended the proceeding and entered an order of removal without a hearing to the Eastern District of Texas, Sherman Division. Dr. Adeoye remained in custody for twenty-eight (28) days until his detention hearing on October 20th, 2021.

Pretrial Services in Midland correctly recommended release. Pretrial Services in Sherman correctly recommended release. The Honorable Christine Nowak conducted a full evidentiary hearing on October 20th and likewise correctly ruled Dr. Adeoye be released. The Government, after missing its deadline, then filed their appeal.[1]

## II. THE GOVERNMENT CANNOT MOVE FOR DETENTION OF DR. ADEOYE DUE TO A 28-DAY DELAY IN THE HEARING

As a threshold matter, Adeoye objects to the Government's ability to move for detention after an unreasonable delay caused by the Government.[2] A defendant cannot be detained unless a hearing pursuant to the provisions of §3142(f) has been conducted. *United States v. Gourley*, 936 F. Supp. 412, 415 (S.D. Tex. 1996). Such hearing shall be "held immediately upon the person's first appearance before the judicial officer unless that person,

---

[1] Recognizing that Dr. Adeoye had been detained without due process for over 4 weeks by the time the detention hearing had occurred, Magistrate Judge Nowak ordered a formal appeal of her Order of Release must be filed by 5:00pm on October 27th, 2021. The appeal was filed on that day, but untimely after the deadline had passed.

[2] This objection was made and preserved during Dr. Adeoye's initial 28-day detention and again in Magistrate Court, where Judge Nowak stated she would take the matter up on advisement. *Det. Hg. T. at 12-13*.

2

or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of such person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday). 18 U.S.C. § 3142(f)(2). "A prompt hearing is necessary, and the time limitations of the [Bail Reform] Act must be followed with care and precision" because "a vital liberty interest is at stake." *United States v. Montalvo-Murillo*, 495 U.S. 711, 716 (1990).

Here, the Government moved for detention via a typewritten form, and moved for a continuance of 3 days on September 23rd, 2021. Dkt. 192, page 4. Despite the time limitations imposed under 18 U.S.C. 3142(f), the Magistrate declined to hold a detention hearing, ordered Dr. Adeoye detained *without* a hearing, without counsel, and ordered him removed to the prosecuting district.

Adeoye recognizes the Court in *Montalvo-Murillo* ruled that violation of the strict time limitations in 18 U.S.C. §3142(f) does not require the release of a person who should otherwise be detained. However the *Montalvo-Murillo* Court noted that "it is conceivable that some combination of procedural irregularities could render a detention hearing so flawed that it would not constitute 'a hearing pursuant to the provisions of subsection (f) for purposes of § 3142(e)'" *Montalvo-Murillo*, 495 U.S. at 717. This is such a case, as no attempt to conduct the hearing took place before the order of detention.

These 'procedural irregularities' and the resulting delay of *almost ten times* the statutory time limits rendered the process so flawed that it is a violation of his right to a prompt detention hearing under 18 U.S.C. §3142(f) and his right to due process of law under the 5th

and 14th Amendment. *Montalvo-Murillo*, 495 U.S. at 717. As such, Dr. Adeoye is entitled to release as the law requires.

### III. DR. ADEOYE DOES NOT PRESENT A RISK OF FLIGHT

Even if the Court decides that the Government is indeed entitled to move for detention after a month of incarceration, the Government cannot establish by preponderance of the evidence that Dr. Adeoye presents a serious risk of flight.[3]

The burden is and remains on the government to prove to the Court that Dr. Adeoye there are no conditions of combination of conditions which could be set that would "reasonably assure" Adeoye's appearance in court. *See United States v. Fortna*, 769 F.2d 243, 250 (5th Cir. 1985) ("The standard is reasonably assure appearance, not 'guarantee' appearance, and that detention can be ordered on this ground only if 'no condition or combination of conditions will reasonably assure appearance.'"); *See Also United States v. Byrd*, 969 F.2d 106, 109 (5th Cir. 1992) ("There can be no doubt that the [Bail Reform] Act clearly favors non-detention"). Pretrial release should only be denied for "the strongest of reasons." *See Truong Dinh Hung v. United States*, 439 U.S. 1326, 1329 (1978). Ties to another country, without more, is insufficient to meet the government's burden to detain. *United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985).

---

[3] In its appeal, the Government seems to have abandoned its argument at the detention hearing that Dr. Adeoye was somehow also a risk of obstruction of justice.

4

The Government seeks to effectively punish Adeoye for (1) his nationality, (2) his financial success as a medical doctor, and (3) his generosity to his family –indeed, these three factors are the crux of their argument that he presents a serious risk of flight.[4] Adeoye is a 47-year-old medical doctor who lives in the Houston-area in a home he owns with two siblings, one sister-in-law, one mother-in-law, and six of his nieces and nephews.  To a large degree, he helps support them all financially.  He owns two medical clinics in the Houston Area, supervises a number of nurse practitioners, and further works as a contract physician helping underserved communities who are lacking in medical care.  To claim Dr. Adeoye does not have firmly planted roots in the Texas is more than a stretch –it's just flat-out false.

His medical practice, as with many in the field, has brought him financial success. A majority of his income comes from his work as a contract physician for companies like Concord Medical Group, which can be readily verified.[5]  While some of us might utilize wealth to purchase lavish cars or million-dollar homes, Dr. Adeoye uses it to

---

[4] The Government likewise focused, though only in their appeal of the release order, about late disclosures of financial accounts to United States Probation. Dkt. 304 at 5.  They claim, without evidence, that these disclosures were only made as part of some legal strategy.  *Id*.  The Government had the opportunity to call U.S. Probation Officers from Midland or two from Sherman, all of whom recommended Dr. Adeoye be released, but they declined to do so.  Dr. Adeoye and counsel wanted U.S. Pretrial to have a full picture of his life, as he wants the Court to have now, because he has nothing to hide.

[5] This is included to rebut the Government's demonstrably false allegation that Dr. Adeoye operates a clinic that takes in $50,000.00 per month in cash and is therefore apt for money laundering.  Dkt. 304 at 9.

financially support his family in Houston,[6] helps financially support his family in Nigeria,[7] and allows him to do medical work for those who cannot afford it for free.[8] He lives modestly and helps others. Other than the unproven allegations here, even the Government's witness agreed Dr. Adeoye lives "a clean life." *Det. Hrg. T. at 79.*

The Government claims that Dr. Adeoye presents "a serious risk" of flight. *See* 18 U.S.C. §3142(f)(2)(A). But their own case agent admits they have absolutely no evidence to that effect.[9] The Government cannot meet their burden to prove such serious risk of flight because, quite simply, it is not true.

## IV.   THE § 3142(g) FACTORS SUPPORT RELEASE

While the analysis of Dr. Adeoye's characteristics leads to the clear conclusion that he presents little to no risk of flight, the factors in 18 U.S.C. §3142(g) will likewise point to the same conclusion of two districts of U.S. Pretrial Services and the ruling of Magistrate Judge Christine Nowak –Dr. Adeoye should be released.

1. *The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device.*

---

[6] *Det. Hrg. T. at 78*
[7] *Det. Hrg. T. at 42*
[8] *Det. Hrg. T. at 93*
[9] **Mr. Akers:**   Well, let's go further. You have no evidence to suggest that Dr. Adeoye has a plan to flee the country?
  **Witness:**   No, sir.
    *Det. Hrg. T. at 62*

Adeoye is charged with one count of conspiracy to commit wire fraud under 18 U.S.C. §1349 and one count of conspiracy to commit money laundering under 18 U.S.C. §1956. In the Government's discussion of the first § 3142(g) factor, they fail to even allude to any overt act done by defendant. This is intentional. For while the circumstances outlined in the Government's appeal may apply to some or even most of the defendants in this indictment, it has nothing to do with Segun Adeoye. In a 28-defendant conspiracy, Defendant is only alleged to even be aware of the existence of two others –a husband and wife.[10]

Dr. Adeoye received a total of $43,052 from codefendant Edgal Iribhogbe via three checks on May 15th, 2020. This $43,052 sent to Dr. Adeoye is alleged to have been from a 'romance scam' that the Government admits Dr. Adeoye took no direct part in.[11] On May 27th, 12 days later, a wire is sent from Adeoye's personal bank account in the amount of $43,000 to the Kyokuyo Company in Japan.[12] Between May and July 2020, toll records show approximately 50 contacts between phones associated with Edgal Iribhogbe and Dr. Adeoye, though the subject of conversation is unknown. A search of Edgal Iribhogbe's wife's Google drive revealed a screenshot of Adeoye's wire transfer confirmation, though the Government does not know how or when it was

---

[10] *Det. Hrg. T. at 68.*
[11] Det. Hrg. T. at 51.
[12] Upon a quick Google search of the Kyokuyo Company, it appears very much to be a legitimate seafood exportation company, with offices in Japan as well as Los Angeles, Seattle, and New York. The Government has not done this research. *Det. Hrg. T. at 66.*

7

sent.[13] The wire was not sent from an illicit account or one containing fake information as in some other defendants' matters –it was sent from Dr. Adeoye's personal account listing his name and home address. It is clearly in line with innocent behavior.

Other than rank speculation or guesswork, the Government has absolutely no corroborating evidence to show that Adeoye knew the funds he was wiring were illegitimate. Even if that were not so, Adeoye's entire involvement in this scheme was a $43,000 loss…approximately 0.252% of the other defendants' scheme. *As to Dr. Adeoye*, not to the group as per the Government's focus, the nature and circumstances factor favor release.

**2.  *The weight of the evidence*:**

In addressing this factor, the Government yet again focuses on evidence of *the group* of other defendants. The evidence against Dr. Adeoye, however, is perfectly in line with that of a person who did not know they were transferring illicit funds. The Government has no evidence Dr. Adeoye was in any way compensated for making this transaction,[14] no evidence that he communicated with or even knew more than one coconspirator,[15] and no evidence to show that Dr. Adeoye knew that the Kyokuyo Company was anything other than a legitimate entity or investment. Indeed, the Government's agent admitted he had not even googled the company.

---

[13] Det. Hrg. T. at 71.
[14] *Det. Hrg. T.* at 67-68.
[15] *Det. Hrg. T.* at 68

Toll records show Adeoye's phone and Edgal Iribhogbe's phone were communicating. Dr. Adeoye's bank account wired money to a seafood company in Japan. That is where the evidence stops. Had the Government wanted to know if Dr. Adeoye was aware of the nature of the funds he allegedly sent, then they should have *asked* him when they arrested him in the middle of an emergency room hospital shift.

This factor favors release.

3. *The person's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings.*

Dr. Adeoye is 47-years-old, was indeed born in Nigeria, and is a lawful permanent resident of the United States, planning to apply for citizenship after the mandatory 5-year waiting period. He has lived in the Houston, TX area for the past 4 years, and has not visited Nigeria since the year 2013 to visit family after he finished his residency.[16]

After spending time as a contract physician with different medical facilities, he now owns two clinics in the Houston area,[17] [18] both catering to lower-income families,

---

[16] The Government argued at the detention hearing that Dr. Adeoye may have travelled out of the country in 2017, but were forced to retract that argument when they re-examined documents and found the allegation to be provably false.

[17] The Government also correctly points out that he is involved in BMB Associates, an imaging center in Dallas. This business operates at a net loss, which is why it was not mentioned when Adeoye was questioned by Probation regarding his income.

[18] The Government argues that Adeoye's sister's car containing $16,000 in cash is an aggravating factor. Cash from the clinic is taken out of the building every night since approximately June of 2020, when the pharmacy next door was robbed. *See Exhibit 2, Incident Report.*

often working to help with their medical problems without pay.[19] Upon his arrest, he was working a shift at the emergency room at Winkler County Memorial Hospital in Kermit, TX as the town hospital had difficulty staffing the facility. A large amount of his income comes from being employed as a contract physician for such places working in emergency rooms.

Dr. Adeoye lives in the Houston area with several immediate family members, including his sister and sister-in-law and their children, all of whom he helps support financially.[20] His sister, Tope Adeoye, has been vetted and approved by Pretrial Services as an appropriate third-party custodian. Segun has never before had any arrests, negative contact with law enforcement, or any alleged violations of state or federal law.[21] He has no history of alcohol/drug abuse or any violent tendencies whatsoever, and has had strong community ties to the Houston area for several years. Even the Government's witness agreed Dr. Adeoye lives "a clean life." *Det. Hrg. T. at 79*.

This factor favors release.

4. ***The nature and seriousness of the danger to any person or the community that would be posed by the person's release:***

Dr. Adeoye poses absolutely no danger to the community or individuals should he be released. The Government cites *United States v. Parr,* which requires consideration

---

[19] *Det. Hrg. T.* at 88.
[20] *Det. Hrg. T.* at 78.
[21] The Government couches Dr. Adeoye's lack of a criminal record as an aggravating factor, alleging that because he has never before been in trouble, he somehow fits the 'modus operandi' of this organization.

of the defendant's propensity to commit crime generally. 399 F.Supp. 883, 888 (W.D. Tex. 1975). Adeoye welcomes this inquiry, as even the Government's case agent recognizes he has no propensity for criminal activity.[22] He owns and operates two medical clinics, catering to the underprivileged of the Houston area. Upon his release, he will focus his time and energy on running those clinics and helping them recover from his over month-long absence while in custody awaiting his release.

There is absolutely *no* danger to the community with Adeoye's release, economic or otherwise. This factor weighs in favor of his release.

## IV. CONCLUSION

Pretrial Services in two different districts recommended Dr. Adeoye be released. Judge Christine Nowak held a full evidentiary hearing and likewise ruled he be released. The Government makes a compelling case when speaking in generalities about the group of defendants as a whole, but when faced with the requirement of proving individual issues, they fail with respect to Dr. Adeoye. Every neutral party viewing Dr. Adeoye's character and circumstances believes he is neither a risk of flight nor any danger to the community for one simple reason: he isn't. This Court can confidently impose conditions that will assure the safety of the community and Defendant's appearance.

---

[22] *Det. Hrg. T.* at 78-79.

As of the filing of this motion, Dr. Adeoye has been in custody in half a dozen different facilities for a period of approximately 45 days. Defendant prays this Court deny the Government's motion to revoke his release, affirm the Magistrate Court's order granting him pretrial release in accordance with the pretrial report's recommendation.

Respectfully submitted,

**THE AKERS FIRM, PLLC**

*/s/ Cordt C. Akers*
Cordt C. Akers
The Akers Firm, PLLC
3401 Allen Pkwy, Ste. 101
Houston, Texas 77019
Tel:   (713) 877-2500
Fax: 1 (713) 783-8662
Email:  cca@akersfirm.com

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing via the Electronic Filing System for the Southern District of Texas, which served attorneys for the Government, and also emailed copies to the attorneys for the government.

*/s/ Cordt C. Akers*
Cordt C. Akers