## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES | § | |
| | § | |
| V. | § | No. 4:21-CR-253 (13) |
| | § | |
| SEGUN PATRICK ADEOYE | § | |

---

### SEGUN ADEOYE'S MOTION FOR SEVERANCE

---

**TO THE HONORABLE AMOS MAZZANT:**

Segun Adeoye, Defendant in the above-titled and numbered cause, respectfully moves this Court sever his trial from his codefendants pursuant to Rule 14 of the Federal Rules of Criminal Procedure and the Sixth Amendment of the United States Constitution.  In support, we show the Court as follows:

### I.    INTRODUCTION

The 15-page indictment in this case alleges dozens of representative overt acts and conspiratorial manners and means. It describes the actions of over two dozen individuals alleged to have been engaged in half a dozen different fraud schemes used to glean funds from over a hundred unsuspecting victims. The allegations involve codefendants attempting to flush evidence down toilets, threats of violence to others, and membership in an international criminal fraud organization known as "The Air Lords," operating "under a philosophy of Pan-Africanism and militant action." (Dkt.

166). ***None of this applies to Segun Adeoye***. Quite the contrary, the one codefendant that Dr. Adeoye had any contact with whatsoever has voiced his sorrow that Adeoye is included in the indictment, as he admits Adeoye had absolutely no knowledge of the illicit nature of the transaction.

A joint trial with over two dozen codefendants will take months to try. It will involve dozens of witnesses with allegations sinister in nature designed to paint a picture of a full beating-heart criminal organization.  In an indictment alleging over $17 million in fraudulently obtained funds, Segun Adeoye is not alleged to have profited even a dime. He received a single $43,000 amount and transferred it to a legitimate seafood company located in Japan.  An allegation of one single and relatively small transaction should not be tried conjunctively with over two dozen other individuals alleged to have engaged in scores of fraudulent transactions.

This Court should thus grant severance under Rule 14 to safeguard Dr. Adeoye's fundamental trial rights and to ensure the fairness and reliability of these proceedings.

## II.    ARGUMENT

Rule 14 provides that a court may grant a severance when it appears that a defendant will be prejudiced by a joint trial. FED. R. CRIM. P. 14. That is the case for Dr. Adeoye, as he loses guaranteed rights if tried in what would certainly be a weeks or even months-long trial with his 27 codefendants–only two of which he had ever actually met or spoken to.  Dr. Adeoye's case, if tried alone, would take a matter of days.

Rule 14 recognizes that even when joinder is proper under Rule 8(b), Fed. R. Crim. P., it may prejudice a defendant. Thus, the court should grant a severance "if there is a serious risk that a joint trial would compromise a specific trial right of a properly joined defendant or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

> Such a risk might occur when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant. For example, evidence of a codefendant's wrongdoing in some circumstances erroneously could lead a jury to conclude that a defendant was guilty. **When many defendants are tried together in a complex case and they have markedly different degrees of culpability, this risk of prejudice is heightened**.

*Id.* (citing *Kotteakos v. United States*, 328 U.S. 750, 774-775 (1946) (emphasis added)). Moreover, "[e]vidence that is probative of a defendant's guilt but technically admissible only against a codefendant also might present a risk of prejudice." *Id.* (citing *Bruton v. United States*, 391 U.S. 123 (1968)). Finally, "a defendant might suffer prejudice if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Id.* (citing *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1979) (*per curiam*)).

The grant or denial of a Rule 14 severance is within the trial court's discretion. *United States v. Scott*, 659 F.2d 585, 589 (5th Cir. 1981) (citation omitted). However, because Rule 14 is a bulwark of the right to a fair trial, a court's decision not to sever parties will be reversed if the court abuses its discretion. *See, e.g., United States v. McCarter*, 316 F.2d 536, 539 (5th Cir. 2002) (reversing trial court's decision not to sever trial of

prejudicial count, where it might have affected jury's finding in the face of scant evidence that defendant had knowledge that drugs were the object of a robbery); *United States v. Romanello*, 726 F.2d 173, 181 (5th Cir. 1984) (abuse of discretion to deny codefendants severance request due to mutually exclusive, antagonistic defenses).

In this case, failure to grant Dr. Adeoye's motion for severance will (1) unjustly deprive him of critical exculpatory evidence and (2) result in incurable prejudicial spillover from evidence not admissible against him and mutually exclusive antagonistic defenses.

## A.     Absent Severance, Dr. Adeoye Will Be Deprived Of Critical Exculpatory Evidence

The Supreme Court recognized that "a defendant might suffer prejudice [from a joint trial] if essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial." *Zafiro*, 506 U.S. at 539 (citing *Tifford v. Wainwright*, 588 F.2d 954 (5th Cir. 1979) (*per curiam*)); *see also Byrd v. Wainwright*, 428 F.2d 1017, 1021-23 (5th Cir. 1970) (violation of Due Process to deny motion for severance where other codefendants in the case would testify for defendant only if they were tried first). And, in such a case, the Fifth Circuit Court of Appeals requires that:

> A movant seeking severance must demonstrate: 1) a bona fide need for the testimony, 2) the substance of the desired testimony, 3) its exculpatory nature and effect, and 4) the willingness of the co-defendant to testify at a separate trial. *United States v. Rice*, 550 F.2d 1364, 1369 (5th Cir.), *cert. denied*, 434 U.S. 954 . . . (1977). After such a showing, the court must consider: 1) the significance of the alleged exculpatory testimony in relation to the defendant's theory of defense, 2) the extent to whifragach the defendant might be prejudiced by the absence of the testimony, 3) judicial

administration and economy, and 4) the timeliness of the motion. *United States v. Butler*, 611 F.2d 1066, 1071 (5th Cir.), *cert. denied*, 449 U.S. 830 . . . (1980).

*United States. v. Ramirez*, 954 F.2d 1035, 1037 (5th Cir. 1992). In sum, potential exculpatory testimony requires substantive information. *United States v. Morrow*, 177 F.3d 272, 292 (5th Cir. 1999).

After 27 of the 28 codefendants were detained, a majority of them were placed in Cimarron Correctional Facility in Oklahoma. In this facility, codefendant Solomon Esekheigbe was approached by codefendant Edgal Iribhogbe—the only connection that Dr. Adeoye has with this entire enterprise.  Iribhogbe admitted to Esekheigbe that Adeoye had no knowledge of the illicit nature of the funds and believed that the $43,000 wire to the Japanese company was completely legitimate.  This testimony completely exculpates Segun Adeoye.

Esekheigbe, through counsel, has indicated that he would provide this testimony if Adeoye were to have a separate trial.  However if tried together, Adeoye would not be able to compel Esekheigbe's testimony. A separate and expedited trial enables Esekheigbe to testify for Dr. Adeoye so that the truth of the matter may be known and that he is able to exercise his Constitutional right to compel witnesses to testify on his behalf.

**B.    The Highly Prejudicial Spillover Effect Of Inadmissible Evidence Relating To Other Codefendants' Conduct Requires A Separate Trial**

Segun Adeoye is currently set to be tried in a single trial along with 27 other individuals. It is well-established that "the risk of prejudice to the entire criminal justice system increases incrementally with the number of defendants and the length of the trial." *United States v. Delatorre*, 522 F.Supp.2d 1034, 1050 (N.D. Ill. 2007). "Trials of such extensive scope and duration threaten the most basic goals of the federal criminal justice system: 'simplicity in procedure, fairness in administration, and the elimination of unjustifiable expense and delay.'" *Id.* (quoting FED. R. CRIM. P. 2). As such, when unfair prejudice is almost certain to occur and incurable by a limiting instruction, justice requires severance. *See United States v. McRae*, 702 F.3d 806, 827 (5th Cir. 2012). This is such a case and one that will undeniably require countless limiting instructions due to the 27 defendants and numerous alleged schemes involved, of which Dr. Adeoye is alleged to have committed *only* one periphery transaction. *See United States v. Erwin*, 793 F.2d 656, 666 (5th Cir. 1986) (finding denying severance was abuse of discretion when "very little of the mountainous evidence was usable against [defendant], and almost none of it applied directly").

Dr. Adeoye is entitled to a separate trial from his codefendants because the weight of the evidence against him is minute compared to the weight of the evidence against his codefendants. Specifically, Dr. Adeoye would be prejudiced by a joint trial because: (1) only a *de minimis* portion of the evidence presented during the trial will relate directly to him; (2) the evidence relevant only to the other codefendants may create a background of egregious conduct against which the jury may react negatively towards

the lot; and (3) the jury will be overly prone to find him guilty by association. When unrelated transactions involving several defendants are joined together, "[i]t cannot be said . . . that all the defendants [would not be] . . . embarrassed and prejudiced in their defense, or that the attention of the jury may not have been distracted to their injury in passing upon the distinct and independent transactions." *United States v. Bova*, 493 F.2d 33, 36 (5th Cir. 1974) (quoting, *McElroy v. United States*, 164 U.S. 76, 81 (1896)).

## 1. Complexity Of The Indictment And Disproportionality Of The Evidence

The more complex the case, the longer the trial record, the more difficult it is "for a jury to keep straight the specific evidence and charges against each defendant." *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987) (quoting *United States v. Branker*, 395 F.2d 881, 887-88 (2d Cir. 1968)). In *Gallo*, fourteen defendants were charged with RICO conspiracies and/or substantive counts involving a plethora of schemes. *Id.* at 750. Notably, as in this case, there were "conspiracies within conspiracies, and conspiracies to conceal other conspiracies." *Id.* at 751. To this end, a joint trial would have lasted many months. *Id.* at 750. This complexity, coupled with the sheer number of defendants involved, favored a motion to sever because "the element of proof on any given 'scheme' [could] be quite confusing" to a jury. *Id.* Similarly, in *Branker*, a fraudulent scheme conspiracy case involving a motion to sever, the court found four defendants had "simple [cases] which would have taken only a short time to try separately." *Branker*, 395 F.2d at 888. Such is the case with Dr. Adeoye.

Here, the government argues several schemes as part of two conspiracy counts: romance fraud targeting individuals; corporate fraud targeting businesses and investors; and, and unemployment insurance fraud targeting government funds. Indictment, generally. The indictment further alleges 25 individuals defrauded at least 100 victims across the United States, Africa, and Asia. Indictment 11. The allegations span over the course of several countries, contain evidence in different languages and dialects, and involves hundreds of financial transactions through a multitude of bank accounts. Segun Adeoye's allegation involves only one bank and one transaction.

Undeniably, allegations of this magnitude will take weeks or months to prosecute, especially, if done in a such a megatrial. Like *Gallo*, where there were "conspiracies within conspiracies," *Gallo*, 668 F. Supp. at 751, the Indictment, general as it is, lists countless intricate schemes across three different domains. Yet, the Indictment describes Dr. Adeoye's alleged conduct in only one sentence: "Adeoye wired $43,000 from his Chase Bank." Indictment 8. Even if true, surely, Dr. Adeoye's alleged criminal conduct is "only peripherally related to those alleged against the other [defendants]." *Erwin*, 793 F.2d 656 at 666.

Dr. Adeoye's alleged involvement is overwhelmingly disproportionate to the codefendants—he never swindled victims, organized meetings, or directed other coconspirators. Simply put, his alleged involvement is a drop in the bucket compared to other codefendants. *See McRae*, 702 F.3d at 828 ("factor favoring motion to sever was the "marginal relationship between the charge and the evidence against [the

defendant] and . . . his co-defendants"). In this way, as in *Branker*, where the "[severed] defendants had very little connection with their co-defendants" and "would have taken only a short time to try separately," Dr. Adeoye's single allegation is only tangentially connected to the overarching alleged transnational conspiracy. *Branker*, 395 F.2d at 888.

### 2. A Joint Trial Results In Inconsistent And Antagonistic Defenses, Which Further Prejudices Dr. Adeoye And Prevents Him From Getting A Fair Trial

Antagonistic defenses can also prejudice a defendant to a degree requiring severance. *United States v. Romanello*, 726 F.2d 173, 180 (5th Cir. 1984). Defenses are antagonistic if they are "mutually exclusive or irreconcilable, that is, if the core of one defendant's defense is contradicted by that of a codefendant." *United States v. Richards*, 204 F.3d 177, 195 (5th Cir. 2000) (citation omitted). But antagonistic defenses are not *per se* mutually exclusive; severance is required only if the jury must necessarily disbelieve one defendant's core defense to believe the other defendant's core defense. *United States v. Berkowitz*, 662 F.2d 1127, 1134 (5th Cir. 1981). Antagonistic defenses are also ones where, as here, Defendant A's core "defense is his co-defendants' guilt, but the [co-defendants' core defense] does not directly accuse" Defendant A. *Romanello*, 726 F.2d at 180.

In *Romanello*, three defendants' motions for severance were denied, and they were subsequently convicted of, inter alia, conspiring to transport stolen goods in interstate commerce. *Id.* at 175-76. Importantly, one defendant's defense was that two other defendants robbed him of the goods in Texas and fled to New York before being

caught. *Id.* The other two defendants' defense was that they did not rob the other defendant but, instead, "accepted a job to drive [ ] to New York" and unknowingly transported the stolen goods. *Id.* at 177. As such, if the jury believed the one defendant's defense of being robbed by the other two defendants, then they could not possibly believe the other two defendants' defense of unwittingly transporting stolen goods and vice versa. *Id.* And, given the lone defendant's defense of being robbed, the other two defendants vigorously attacked the credibility of the lone defendant's police statement and, in doing so, "aided the prosecution." *Id.* at 180-81. The court held these were mutually exclusive, antagonistic defenses, which, at trial, prejudiced all codefendants to a degree requiring reversal. *Id.* at 178; *cf. Berkowitz*, 662 F.2d at 1134-35 (holding codefendant defenses that each defendant was not as culpable as the other were not mutually exclusive and no abuse of discretion to deny motion for severance).

*Romanello* is instructive here because this is precisely the prejudicial vice facing Dr. Adeoye. Like *Romanello*, where two codefendants attacked the lone defendant's police statement, here, Dr. Adeoye's core defense is that he had no knowledge of the conspiracies. In short, Iribhogbe lied to Dr. Adeoye, claiming he needed Dr. Adeoye to wire money for legitimate business reasons. While Adeoye is not privy to Iribhogbe's defense, it would undoubtedly be that he told the truth to Adeoye but did not know the truth himself.  In short, much like in *Romanello*, it is a legal impossibility for a jury to believe both Dr. Adeoye's defense and Iribhogbe's defense. Accordingly, it is almost a certainty that part of Iribhogbe's defense will be to purposely undermine Dr. Adeoye's

defense, which will deny Dr. Adeoye's right to a fair trial. *See Romanello*, 726 F.2d at 181; *Richards*, 204 F.3d at 194-95 (finding mutually antagonistic defenses require severance when "defendant shows 'specific and compelling prejudice' the joint trial caused his defense").

### 3. Given The Substantial Prejudice Dr.  Adeoye Would Suffer From A Joint Trial, A Limiting Instruction Would Be Ineffective To Cure The Prejudice And Guarantee Dr. Adeoye His Fundamental Right To A Fair Trial

Evidence admissible against one defendant and inadmissible against other defendants invariably results in prejudice, which a limiting instruction can, at times, cure. *Morrow*, 177 F.3d at 290. But in complex cases, such as those involving multiple conspiracies, predicate offenses, and tens of defendants, limiting instructions are far less effective. *Gallo*, 668 F. Supp. at 753. Even more, when highly inflammatory evidence is admissible against some codefendants and not others it taints the jury's truth-seeking process. *Id.* at 750; *McRae*, 702 F.3d at 828 ("we cannot be reasonably confident that the jury could compartmentalize the evidence separately for each defendant" (citation omitted)); *United States v. Cortinas*, 142 F.3d 242, 248 (5th Cir. 1998) ("Limiting instructions given by the trial judge were inadequate to mitigate the prejudicial effect of the overwhelming testimony regarding the violent, criminal activities.").

The indictment in this case, vague as it may be, mentions dozens of representative overt acts and conspiratorial manners and means.  It describes the actions of over two dozen individuals alleged to have been engaged in half a dozen different

fraud schemes used to glean funds from over a hundred unsuspecting victims.  The allegations involve codefendants attempting to flush evidence down toilets, threats of violence to others, and membership in a criminal fraud organization known as "The Air Lords," operating "under a philosophy of Pan-Africanism and militant action."  (Dkt. 166).  ***None of this applies to Segun Adeoye***.  (See Dkt. 311, Transcript of Detention Hearing, generally).  Undeniably, the government's evidence against the defendants will paint a picture of an international criminal conspiracy clothed in secrecy, sophistication, and, in some cases, violent coercion. Indictment 3-5 ("Manner and Means"). Taken as a whole, a limiting instruction is insufficient to cure any prejudice against Dr. Adeoye because it "would require twelve minds more perfectly disciplined than those of the average human jurors." *United States v. Ragano*, 476 F.2d 410, 416 (5th Cir. 1973) (quoting *Barton v. United States*, 263 F.2d 894, 898 (5th Cir. 1959)).

## CONCLUSION

WHEREFORE PREMISES CONSIDERED, Dr. Segun Adeoye respectfully requests this Court sever his trial from his codefendants and set a separate and expedited trial on the Court's docket.

Respectfully submitted,

**THE AKERS FIRM, PLLC**

*/s/ Cordt C. Akers*
Cordt C. Akers
The Akers Firm, PLLC
3401 Allen Pkwy, Ste. 101
Houston, Texas 77019

Tel:     (713) 877-2500
Fax: 1+(713) 583-8662
Email:   cca@akersfirm.com

**ATTORNEY FOR
SEGUN ADEOYE, M.D.**

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing via the Electronic Filing System for the Southern District of Texas, which served attorneys for the Government, and also emailed copies to the attorneys for the government.

*/s/ Cordt C. Akers*
**Cordt C. Akers**

## CERTIFICATE OF CONFERENCE

I hereby certify that I attempted to ascertain the opposition on the foregoing matter with attorneys for the Government on June 29th, 2022, but as of the filing of this motion have not received a response.

*/s/ Cordt C. Akers*
**Cordt C. Akers**