IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | No. 4:21CR253 |
| | § | Judge Mazzant |
| SEGUN ADEOYE (13) | § | |

**UNITED STATES' REQUEST FOR A CONTINUED STAY and
MOTION TO REVOKE THE UNITED STATES
<u>MAGISTRATE COURT'S ORDER OF RELEASE</u>**

After a hearing on May 29, 2023, United States Magistrate Judge Nowak ordered Segun Adeoye released. This Court previously found Adeoye should be detained. He should remain detained- there is no new and material evidence supporting release.

This is the timeline related to Adeoye's detention:

**October 15, 2021**: Pretrial Services Report filed. Dkt. 259.

**October 20, 2021**: Detention hearing before United States Magistrate Judge Nowak. Dkt. 290.

**October 21, 2021**: Second Addendum to Pretrial Services Report, Dkt. 297.

**October 22, 2021**: United States Magistrate Judge Nowak issued an oral order releasing Adeoye.

**October 27, 2021**: The United States appealed Judge Nowak's release of Adeoye to this Court. Dkt. 304.

**January 11, 2022**: This Court ordered Adeoye detained pending trial and revoked the United States Magistrate Judge's Order of Release. Dkt. 403.

**March 30, 2023**: Adeoye filed a Motion to Reopen Detention arguing changed circumstances. Dkt. 670.

**April 18, 2023**: United States Magistrate Judge Kimberly C. Priest Johnson entered an Order reopening Adeoye's Detention Hearing. Dkt. 683. The Order stated, "[h]aving considered Defendant's Motion to Reopen Detention Hearing Due to Change Circumstances (Dkt. 670), the motion is hereby Granted. It is therefore Ordered that the matter of Detention is reopened, and a Detention Hearing is set…." *Id.*

**April 24, 2023**: The United States responded to Adeoye's Motion to Reopen. Dkt. 684. (The Court entered an order extending the United States' response date to April 24, 2023. Dkt. 682.)

**May 8, 2023**: Judge Nowak held a detention hearing. At the conclusion of the hearing, the United States was ordered to provide information about phone contacts between Adeoye and co-defendant Edgal Iribhogbe. The United States and Adeoye were ordered to jointly provide the Court with updated information on Adeoye's financial status. Dkt. 698.

**May 30, 2023**: The detention hearing that began on May 8, 2023, was continued on this date. United States Magistrate Judge Nowak made findings on the record. Judge Nowak found that Judge Johnson's order scheduling Adeoye's Motion to Reopen for a hearing (Dkt. 683) was a finding that there were "changed circumstances." Judge Nowak further noted that because Judge Johnson's order found that the circumstances were changed, Judge Nowak would then consider the matter of detention and evaluate all issues. Judge Nowak then ordered Adoye released and stayed the release order to allow the United States an opportunity to appeal to this Court.

Adoeye was not entitled to a *de novo* detention hearing to relitigate the evidence presented at his original detention hearing. The only issue before the Court at the hearing on May 8, 2023 (and the continuation of that hearing on May 30, 2023) was whether there was new and material evidence supporting release. There is no new and material evidence. Adeoye remains, as this Court previously held, a serious flight risk and he should remain detained.

**Background**

This is a unique criminal fraud case. Unlike most defendants indicted on wire fraud and money laundering charges, Adoeye and his co-defendants are embedded in an international and disruptive criminal organization. That organization and these defendants have executed multi-layered fraud schemes, stolen money from victims, and laundered money to businesses and individuals located in Africa and Asia.

Adeoye moved money stolen from a vulnerable, elderly (71-year-old) lady who met someone online whom she believed was U.S. Army General David Rodriguez. This vulnerable, 71-year-old victim lost $750,000 and Adeoye's predatory co-conspirator attempted to persuade her to sell her home to continue to provide cash to the scheme. Adeoye received a portion of the vulnerable victim's money into his account and transferred it to Asia. Adeoye schemed with co-defendant Edgal Iribhogbe. In an approximate four-month period, there were over 100 attempted contacts between Adeoye and Iribhogbe and over 50 completed contacts.

After Adeoye was arrested in this case, he was interviewed by a United States Probation Officer. In that interview, Adeoye neglected to reveal over $500,000.00 he had in various accounts. Dkt. 259. After realizing not revealing assets could be a problem, he then provided the information to the United States Probation Officer. Dkt. 297.

**Reopening a Detention Hearing: 18 U.S.C. § 3142(f)**

Under the Bail Reform Act, a "hearing may be reopened, before or after a determination by the judicial officer, at any time before trial if the judicial officer finds that

**information exists that was not known to the movant at the time of the hearing *and* that has a material bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required**….." 18 U.S.C. § 3142(f) (Emphasis added).

The threshold question is whether the motion to reopen is based on information that was not known or available at the time of the detention hearing. *See United States v. Ward*, 63 F. Supp. 2d 1202, 1206 (C.D. Cal. 1999) ("Courts have interpreted this provision strictly, holding that hearings should not be reopened if the evidence was available at the time of the initial hearing."). The next inquiry is whether the new information has a *material* bearing on the issue whether there are conditions of release that will reasonably assure the appearance of such person as required. 18 U.S.C. § 3142(f) (Emphasis added). Bottom line, the information must be new *and* material.

**Adeoye's Arguments**

Adeoye's "newly discovered facts" involve his guideline calculation, a co-defendant's letter exculpating him and the death of his father. These are not "new" *and* "material" evidence supporting release.

Speculative sentencing analysis is not "new evidence." In *United States v. Zhang*, the defendant filed a motion to reopen his detention hearing when the prosecutor notified Zhang that he would not seek the death penalty. *Zhang*, 2022 WL 17419594 (2nd Cir. 2022). The *Zhang* Court found that the government's decision not to seek the death penalty wasn't "material information" because the Court's original decision denying bail did not

rely on the potential for a capital sentence. *Id*. In this case, just like *Zhang*, this Court did not rely on the sentencing guidelines or punishment analysis in originally holding that Adeoye should be detained. An anticipatory guideline calculation does not support release.

In any event, Adeoye's argument that *his* guideline calculation indicates he has completed his sentence while in pretrial detention is incorrect. The attached guideline analysis based on the evidence in this case shows Adeoye's guideline sentence would be 37-46 months imprisonment. See attached Exhibit 1. A speculative guideline calculation is not new and material evidence and Adeoye has not served his sentence. Plea agreements and colloquies always remind defendants that any guideline estimate their attorney has given them is just an estimate and the sentence will be determined by the Court. A sentence estimate is not grounds for re-opening detention

Adeoye next argues that a letter from co-defendant Edgal Iribhogbe (with whom Adeoye has been incarcerated) exculpates him and he should be released. The Iribhogbe letter suggests a secondary conspiracy to obstruct justice and lacks credibility on its face. Beyond presenting the letter, Adeoye has nothing to support the credibility of a note from a co-conspirator exculpating him. This is not material evidence supporting release.

Finally, Adeoye argues he has fewer international connections now because his father died. At the time of Adeoye's original detention hearing, both of his parents and two siblings lived in Nigeria. Dkt. 259, p. 1. He now argues that because his father died and he only has three close family members in Nigeria, this is a changed circumstance supporting release. Three close family members in Nigeria rather than four is not material. Adeoye

lived in Nigeria for twenty-three years, was educated in Nigeria and has three significant family members in Nigeria and does not have a partner or children who anchor him here. One less family member in Nigeria is not material.

Adeoye's "newly discovered facts" involving his guideline calculation, a co-defendant's letter exculpating him and the death of his father not "new" *and* "material" evidence supporting release.

**Law Governing Detention: 18 U.S.C. § 3142(f)(2).**

Although the narrow issues at the May 8 and 30, 2023 hearings should have been whether Adeoye's evidence was "new" or "material," even under a *de novo* analysis, Adeoye should be detained (as this Court previously held. Dkt. 403). The Bail Reform Act, 18 U.S.C. § 3142, governs detention of defendants. The government may move for detention under
§ 3142(f)(2).

Under (f)(2), the government may seek detention in a case that involves either "A) serious risk that [the defendant] will flee; or B) a serious risk that [the defendant] will obstruct or attempt to obstruct justice…." 18 U.S.C. § 3142(f)(2).

A judicial officer may order a defendant detained pending trial upon a finding that the government has shown by a preponderance of the evidence that no condition or combination of conditions will reasonably assure the appearance of the person. *Fortna* at 250; *United States v. McConnell*, 842 F.2d 105 (5th Cir. 1988).

In making the detention determination, the court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence; (3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. §3141(g).

**Detention Under (f)(2): The Preponderance of the Evidence Supports Detaining Adeoye- He is a Serious Flight Risk**

Under (f)(2), the government may seek detention in a case that involves "…serious risk that [the defendant] will flee…." 18 U.S.C. § 3142(f)(2). Adeoye is a serious flight risk. His mother and two of his siblings live in Nigeria. Dkt 259, p. 1. He received his medical degree in Nigeria. *Id.* He has no partner or children in the United States to anchor him here. *Id.*, p. 2.

Adeoye lived in Nigeria for many years of his adult life and moved back and forth between Nigeria, Ghana and the United States as reflected in the graph. *Id.*, p. 2:

| Adeoye Lived: | Years Adeoye Lived at Location: |
|---|---|
| **Nigeria** | 23 years |
| **Moved to Texas- Donna, Texas** | 4 years |
| **Returned to Nigeria and Ghana** | Approximately 1 year |
| **Returned to Texas- Houston, Texas** | 3 years |

Additionally, Adeoye reported he's lived in multiple locations in the United States, although it is unclear how these locations fit in to the above timeline related to Adeoye moving back and forth between Nigeria/ Ghana and the United States. The locations he reports living in within the United States are: "Connecticut; Taos, New Mexico; Lima, Ohio; Hobbs, New Mexico and New York." *Id.,* p. 2.

Adeoye also has financial ties to Nigeria. He sends money from the United States to Nigeria. Financial documents seized in Adeoye's house on September 22, 2021 reveal that he sent money to Nigeria on multiple occasions. Along with sending money to Nigeria, Adeoye wired $43,000 to a seafood business in Japan. Other swindled funds in the investigation also went to the same seafood business in Japan.

Not only does Adeoye have significant international ties, he also has the resources to flee. He reported to the United States Probation Officer that his monthly income is $50,000 and he has $58,000 in his checking account. *Id.*, p. 2.

Additionally, Adeoye failed to reveal in the interview with United States Probation that he has significant savings. Adeoye's detention hearing was held after multiple other detention hearings in this case. Adeoye was able to review records from previous detention hearings. At pervious detention hearings, concerns were raised when defendants did not reveal information to the United States Probation Officer. Having the advantage of reviewing the previous hearings, Adeoye subsequently disclosed accounts that he failed to reveal when he was interviewed by the Probation Officer. Dkt. 297. Adeoye left out- and later revealed- that he has the following accounts:

- an investment account with Chase containing approximately $350,000.00;

- a New York Stock account containing approximately $120,000.00;

- a general checking account with Chase containing "somewhere between $10,000.00 to $18,000.00"; and

- an Etoro account containing approximately $5,000.00.

*Id.*

Why would Adeoye "forget" to mention over $500,000.00? He is a serious flight risk- he has strong international ties and the means to flee. Judge Nowak requested updated financial information related to Adeoye. The new financial information is attached Exhibit as 2. Adeoye had a house valued at over $600,000 that was sold. However, at the hearing, Adeoye claimed he cannot access the proceeds from the sale of the house. When the FBI searched a car at the defendant's house that contained mail linked to Adeoye, the agents found ***$16,000.00 cash in a Doritos chip bag*** in the glove compartment. Adeoye's sister told the agents the Doritos bag cash was from Adeoye's clinic. This creates the concern that Adeoye has access to bulk cash untracked by the financial system.

Once the government produces a preponderance of evidence showing serious risk that Adeoye will attempt to flee, the analysis turns to the 3142(g) factors.

**Application of the Section 3142(g) Factors**

Again, conducting the (f)(2) analysis, the Court weighs the 3142(g) factors in determining detention. The 3142(g) factors weigh in favor of detention:

**(1) the nature and circumstances of the offense charged**

The nature and circumstances of the crime are aggravating and deviate from the vast majority of fraud cases. First, this case involves a criminal organization with strong financial and criminal connections to primarily Nigeria, but also other international locations. Like other criminal organizations, such as drug cartels and terrorist cells, this one runs with structure and purpose: to swindle vulnerable victims and commit unemployment fraud and other types of fraud.

Second, the type of victim makes the crime here particularly egregious. The organization employed romance scams and unemployment insurance fraud to obtain money. Moreover, the defendants used sophisticated means to execute and conceal their conduct, including "front" businesses, real businesses used to pass stolen money, and multiple bank accounts. The victims include individual people, businesses and companies, and government entities. What is most unfortunate, though, are the scams targeting elderly victims, some lost their life savings.

Third, the international scope of the crime is staggering. Unlike many fraud schemes where ill-gotten funds are immediately cashed, spent on personal expenses, or laundered through domestic businesses, the defendant in this case laundered these funds internationally, making it challenging to trace. Financial records and communications show that the defendants sent money to international businesses, including in Nigeria, China, Hong Kong and Japan, that would receive wire transfers directly from victims or indirectly from domestic accounts controlled by the defendants.

The nature and circumstances of this crime are aggravating and favor detention.

**(2) the weight of the evidence**

The evidence against Adeoye is strong. The FBI conducted a wiretap on the phone of co-defendant Sandra Iribhogbe Popnen (6) for 60 days. The wire revealed that Sandra and her significant other and co-defendant Edgal Iribhogbe (7) were deeply involved in fraud multiple schemes. Essentially, they were the Grand Central Station for the fraud money. At one point on the wire intercepts, Sandra bragged that she does "419" which is a reference to the Nigerian criminal code section that addresses fraud. Adeoye partnered with the Iribhogbes in committing "419." Here is what happened:

A 71-year-old female victim (KH) believed she was in a romantic relationship with General David Rodriguez of the U.S. Army and that General Rodriguez had an attorney who worked with him named Eli Spencer. Vulnerable victim KH was swindled out of $750,000.00. In a series of events, KH was instructed on May 4 and 5, 2020 to wire $25,000.00 each day (total $50,000.00) to "Eli." On May 15, 2020, Edgal Iribhogbe wrote three separate cashier's checks from three different banks on the same date for approximately $43,000.00.

Photos of Segun Adeoye's bank account on Sandra Iribhogbe's iCloud account revealed that on May 27, 2020, Adeoye wired $43,000.00 to Kyokuyo Co LTD in Japan. Telephone toll information revealed that from May of 2020 through July of 2020, there were over 100 attempted contacts over fifty completed between a phone linked to Edgal Iribhogbe and a phone linked to Segun Adeoye.

This event tracked the motus operandi of the scheme that the FBI identified: the predator directing the fraud had a masked online identity (through VPN or other masking technique); the predator directed the victim to send money; the victim sent the money; the money was moved to another account or converted to cashier's checks and then redeposited and wired overseas. It is a shell game and each step hides and launders the stolen money. Very much part of the motus operandi of the criminal organization was documenting the transactions. The members of the organization needed to document and provide proof that they conducted the criminal transactions. Hence, Adeoye's "proof" that he sent the $43,000.00 to Japan was found in Sandra's iCloud account.

As noted above, when the FBI searched a car at Adeoye's house that contained mail linked to Adeoye, agents found **$16,000.00 cash in a Doritos chip bag** in the glove compartment of the car. Adeoye's sister told the agents the Doritos bag cash was from Adeoye's clinic.

The weight of the evidence favors detention.

**(3) the defendant's history and characteristics, including, among other things, his family ties, length of residence in the community, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings**

A further part of the modus operandi of the criminal organization in this case was for the members to have otherwise legitimate appearing employment (fourteen of the defendant in this indictment are in the health care field) and have no criminal history (very few of the defendants have any criminal history).

Individuals in the health care field have access to personal information of the patients they interact with. Personal identifiers are used by this organization to apply in multiple states for unemployment benefits. Further, multiple bank accounts may be opened under medical sounding names that are legitimate or fronts to move stolen money. For example, Adeoye lists in the Pretrial Services Report that he has three businesses in Houston: NASA Health Clinic, NASA Urgent Care and prime Occ Urgent Care. (Pretrial Services Report, p. 2).

However, Adeoye neglects to mention another business he is involved in. Adeoye is listed as a managing member of BMB Associates, LLC formerly known (changed September 1, 2020) as North Texas Digital Imaging.

Adeoye fits both criteria for this criminal organization: he is in health care and has no criminal history.

In terms of Adeoye's health care clinics, he reports he has only been back in the United States for four years, yet he says he earns $50,000.00 a month. So, in a four-year period, according to Adeoye, he built a business where he earns $600,000.00 a year.

Again, as noted above, when the FBI searched a car at the defendant's house that contained mail linked to Adeoye, the agents found $16,000.00 cash in a Doritos chip bag in the glove compartment. Adeoye's sister told the agents the Doritos bag cash was from Adeoye's clinic. A clinic that operates in cash is uniquely positioned to launder money.

In terms of family, Adeoye's one parent and two siblings are in Nigeria and he has no partner or children anchoring him to the United States.

This factor weighs in favor of detention.

### (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release

Adeoye is a danger to the community. The "danger to the community" can be economic. The legislative history of the Bail Reform Act makes clear that Congress intended the "safety of the community" concern in 3142 to be construed as broader than merely danger of harm involving physical violence. (S. Rep. No. 225, 98th Cong., 1st Sess. 12 (1983), reprinted in 1984 U.S.C.C.A.N. 3182, 3195) ("The reference to safety of any other person is intended to cover the situation in which the safety of a particular identifiable individual, perhaps a victim or witness, is of concern, while the language referring to the safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.").) "The 'danger to… the community' [language in the Bail Reform Act] permits consideration of the defendant's propensity to commit crime generally, even where only pecuniary and not physical harm might result to the community at large." *United States v. Parr*, 399 F. Supp. 883, 888 (W.D. Tex. 1975); *see also*, *United States v. LeClercq*, 2007 WL 4365601, at *4 (S.D. Fla. Dec. 13, 2007).

Importantly, there is no set of geophysical, financial, or monitoring restrictions that the Court can impose to mitigate that danger. Unlike narcotics or violent crime cases where an ankle monitor physically limits a defendant's ability to continue engaging in criminal behavior, such conditions would have no such effect here. The crime in this case is

executed using a phone or a computer. Given the expansive network and international reach of the crime, releasing the defendant would enable him to liquidate financial and laundering those proceeds from the crime.

The community is in danger- economically- if Adeoye is released. He has access to personal identifiers of potential victims and runs a cash business that is ideal for laundering money. This factor weighs in favor of detention.

**Conclusion**

Adeoye has not raised new and material evidence. Even if the evidence were new and material, it does not support release. Adeoye remains, as this Court previously held under (f)(2) and the 3142(g) factors, a serious flight risk.

The United States requests that this Court stay the ruling below and overturn the oral order releasing Adeoye.

                                    Respectfully submitted,

                                    DAMIEN DIGGS
                                  UNITED STATES ATTORNEY

                                  */s/*
                                  HEATHER RATTAN
                                  Assistant United States Attorney
                                  Texas Bar No. 16581050
                                  101 E. Park Blvd., Suite 500
                                  Plano, Texas 75074
                                  972/509-1201
                                  972/209-1209 fax
                                  heather.rattan@usdoj.gov

## CERTIFICATE OF SERVICE

This is to certify that on June 2, 2023, this document was filed with the Clerk using the CM/ECF filing system, which will cause a copy of this document to be delivered to counsel for defendant via electronic mail.

/s/
Heather Rattan

## CERTIFICATE OF CONFERENCE

I certify that I conference with defense counsel for defendant Segun Adeoye, and the defense is opposed.

/s/
Heather Rattan