```
 1                     UNITED STATES DISTRICT COURT

 2                EASTERN DISTRICT OF TEXAS (SHERMAN DIVISION)

 3    UNITED STATES OF AMERICA,
                                       Case No. 4:21-cr-00253-ALM-
 4              Plaintiff,             KPJ-13

 5    v.                               Sherman, Texas
                                       May 30, 2023
 6    SEGUN ADEOYE,                    11:07 a.m.

 7              Defendant.

 8
               TRANSCRIPT OF CONTINUATION OF DETENTION HEARING
 9                BEFORE THE HONORABLE CHRISTINE A. NOWAK
                      UNITED STATES MAGISTRATE JUDGE
10
      APPEARANCES:
11    For the Plaintiff:            Heather Rattan, Esq.
                                    U.S. Attorney's Office
12                                  101 E. Park Boulevard
                                    Suite 500
13                                  Plano, TX 75074

14    For the Defendant:            Cordt C. Akers, Esq.
                                    The Akers Firm, PLLC
15                                  3401 Allen Parkway
                                    Suite 101
16                                  Houston, TX 77019

17    Court Recorder:               KNP

18    Transcription Service:        Chris Hwang
                                    Abba Reporting
19                                  PO Box 223282
                                    Chantilly, Virginia  20153
20                                  (518) 302-6772

21

22

23
      Proceedings recorded by electronic sound recording;
24    transcript produced by transcription service.

25
```

**INDEX**

|  | Page |
|---|---|
| Court's Ruling | 15 |
| Court's Ruling | 16 |

1      (Call to order at 11:07 a.m.)

2           THE COURT:  All right, everybody at this time, we're
3  going to be calling 421-CR-253.  This is the United States of
4  America v. Segun Adeoye.

5           If I can have an appearance on behalf of the
6  Government, please?

7           MS. RATTAN:  Good morning, Your Honor.  Heather
8  Rattan for the United States.  Present and ready.

9           THE COURT:  Thank you.

10          If I can have an appearance on behalf of Mr. Adeoye?

11          MR. AKERS:  Cordt Akers on behalf of Segun Adeoye.
12  We're ready.

13          THE COURT:  Thank you.

14          Sir, go ahead and tell me your full name, please?

15          THE DEFENDANT:  Segun Adeoye.

16          THE COURT:  Thank you.  All right, everybody, we're
17  scheduled here today to conclude the detention hearing.  I'm
18  just going to re-cap and remind everybody of the procedural
19  history that has brought us here today.

20          Quite some time ago, this Court held the hearing as
21  it relates to Mr. Adeoye's detention.  I ordered him released.
22  That release was stayed, appealed to the district court.  The
23  district court reversed my decision and found Mr. Adeoye should
24  be detained.

25          Subsequent to that, Mr. Akers filed a motion to

1    re-open the issue of detention.  And Judge Johnson found that
2    that motion to re-open should be granted.
3             She initially set this matter for hearing.  And
4    determining that the matter should be heard by the district
5    court, she cancelled her hearing.  The district court
6    thereafter directed us to hold the detention hearing.  And so,
7    we proceeded in holding the same.
8             We had our initial hearing previously.  At the
9    conclusion of that hearing, the Court requested the parties to
10   supplement the evidence before the Court for consideration.
11   And we're convened here today for the purpose of hearing
12   argument and for the Court to render its decision as it relates
13   to the issue of detention.
14            So what we're going to do is right now is go ahead
15   and proceed to argument.  And Ms. Rattan, I'll hear from the
16   Government first.
17            MS. RATTAN:  Thank you, Your Honor.  Of course, the
18   Court knows in a situation like this, the question is is there
19   new evidence or changed circumstances?
20            The new evidence or changed circumstances that the
21   Defendant initially argued when he filed the motion were that
22   he had actually served the sentence, so the circumstances were
23   changed and he should be released because he was persisting in
24   his plea of not guilty, but he had actually served the sentence
25   that he would receive if he were convicted.

1          The other circumstance that the Defendant initially
2   relied on was purportedly exculpatory letter provided in the
3   jail, created drafted in the jail by a co-defendant with whom
4   the Defendant is alleged to have conspired.  So those were the
5   initial new evidence or changed circumstances.
6          Then this Court as you've noted held a hearing.  And
7   what the new evidence is and what the changed circumstances are
8   has kind of become a moving target.
9          But in the end, in the final analysis, it's our
10  position that there aren't new circumstances.  There are not
11  new changed circumstances and that the Defendant should remain
12  detained.
13         And of course, we rely on what we relied on
14  initially.  The Defendant is a flight risk.  There's also
15  evidence that the Defendant's participated in obstruction of
16  justice.  How did this letter get created in the jail?  What's
17  his relationship ongoing with this co-defendant who's now
18  trying to exculpate him?
19         So it's our position that the Defendant should remain
20  detained.  The evidence really has not materially changed since
21  the Defendant was originally detained by Judge Mazzant.  So no
22  changed circumstances.  No new material evidence.
23         And then, of course, the Court asked us to file
24  information about the phone contacts between the Defendant and
25  the co-conspirator Edgal Iribhogbe.  And I know you've reviewed

1  it.  And we filed it.

2  There were over 100 attempted contacts and over 50
3  consummated contacts.  And they were communicating on -- in
4  multiple ways on a couple of different forums, which is a
5  concern and is going to indicate at least we'll argue at trial
6  that it shows that they were trying to be cryptic about their
7  communications, but the bottom line is over 100 attempted
8  contacts and over 50 actual contacts between the two
9  co-conspirators.

10  The other thing that the Court asked for an update on
11  was the Defendant's financial status.  And of course, we filed
12  that with the Court that there's a house valued at over
13  $600,000 that sold.  And I know that the Defense has provided
14  information about that as well.

15  Apparently, the Defendant and people who he has a
16  relationship with, who are not in custody, are now in a lawsuit
17  against each other because it sounds like there's been some
18  fraud involved with them taking money from him, which is what I
19  take from the letter that counsel for the Defendant wrote.

20  And the reason I note that is because these are the
21  people who the Defendant presented as being his solid, stable
22  base when we originally had the detention hearing, saying that
23  these are people who the Court could rely on to supervise him.
24  These are people who are -- provide and show stability in terms
25  of his life here.

1             So, financially, does he have access to money?  Well,
2    there's the sale of the house.  He's provided information that
3    he doesn't have access to the money, but there's also another
4    interesting piece of information that was part of the original
5    detention hearing.
6             And that is the $16,000 cash that was in the chip bag
7    that was in the car with the documents associated with this
8    Defendant.  So what squirrelled away cash does he have?  We
9    don't know.  Who among us has $16,000 of U.S. currency in a
10   Doritos bag?
11            So what is his financial background?  We've attempted
12   to provide that to the Court, but there still would be a
13   question about that as well.
14            The other thing in terms of the financial is that the
15   financial picture of the Defendant also comes up in the context
16   of obstruction because the information the Defendant originally
17   provided to the Probation Officer in his initial bond report
18   did not include all of his financial information.
19            It was only through an addendum after concerns were
20   raised about whether the Defendant had accurately reported his
21   financial picture.
22            And I think as I remember, it was about $500,000 that
23   he neglected to mention to the probation officer.  So
24   obstruction is also a reason for detention under 3142(f)(2).
25   And that -- the financial picture dovetails into whether he did

1    or would obstruct justice.

2            The other thing that has been kind of a moving target
3    issue on whether there's new evidence are his international
4    contacts.

5            At the original detention hearing, the Defendant had
6    his mother, father, and I believe two siblings who were
7    residing in Nigeria.

8            And now his father has died, but his mother and he
9    has two siblings who are still living in Nigeria.  And he has
10   substantial contacts there.

11           He lived for 23 years in Nigeria.  He got his medical
12   degree in Nigeria.  So certainly he has significant foundation
13   there.

14           And I think the evidence at the original detention
15   hearing was that he was sending bulk cash, a lot of money, not
16   necessarily shipping currency, but sending a lot of money back
17   to Nigeria.

18           And the part of the crime is that he sent over
19   $40,000 to Japan.  So, in conclusion, it's our position that
20   there are not materially changed circumstances or new evidence
21   and that the Defendant should remain detained.  Thank you for
22   listening, Your Honor and for reviewing the documents that we
23   filed.

24           THE COURT:  Thank you.
25           Mr. Akers, before you make your argument, I'm just

1  going to again remind everyone, Judge Johnson has already

2  entered an order finding that the matter should be re-opened

3  and that I'm considering the issue of detention.

4           So the Motion to Re-open has already been ruled upon.

5  Judge Johnson has granted that.  And so, we're not dealing with

6  the circumstance or the standard that's applicable to the

7  Motion to Re-open.  We're dealing with the standard applicable

8  to the issue of detention.

9           And so, with that in mind, Mr. Akers, I'll hear

10 argument from you at this time.

11          MR. AKERS:  If it please the Court.  Thank you, Your

12 Honor.

13          So what we've got here in essence is someone that has

14 as the evidence shows been offered an opportunity to get out of

15 custody and spend little to no more time in jail.

16          And he's persisted in his innocence as is his right,

17 as he's responsibility if he does not want to defraud the Court

18 and tell him -- tell the Court that he is guilty when he is in

19 fact not.

20          Which begs the question in my mind and I would think

21 in the Court's mind if he is going to run, he would need to be

22 running from something.

23          The moving target, as we've seen, and I get that it's

24 because we had a different prosecutor here last time, what we

25 heard last time was that because this is a felony and Dr.

1    Adeoye is not a citizen, that he may in fact self-deport
2    instead of getting deported after a trial.
3             To me, that doesn't hold water or make any sense to
4    think that because we're worried that he might do something
5    later -- because we know he might do something later, if he is
6    in fact convicted, which I think is unlikely, that we're
7    worried he might do it ahead of time.
8             And then, we heard a lot about the Government's
9    dissertation of the new application of the Guidelines that they
10   went through at the second hearing.  And I think the Court's
11   sees through that.
12            But what I want to talk about what we just heard is
13   this obstruction stuff.  If the Court recalls back in 2021 --
14            THE COURT:  I don't think we need to address the
15   obstruction stuff.  Obstruction was not argued in connection
16   with the initial hearing for detention.
17            In connection with the prior detention issue as well,
18   the Government withdrew its argument as it relates to
19   obstruction.  I'm not considering obstruction here.
20            The only bases upon which the Government has moved
21   prior to argument today and which is under consideration is
22   (f)(2)(A).
23            (f)(2)(B) was not urged in connection with the
24   initial motion for detention that we're considering at this
25   juncture and it was withdrawn in connection with the original.

1   So there's no need to address obstruction.  It's not part of
2   this Court's consideration.
3           MR. AKERS:  Understood.  Well, let's go then to
4   flight risk.  First of all, in order to be a risk of flight,
5   you need to know that you're fleeing from something.
6           I think I've -- and I apologize sometimes I got a
7   little colorful.  I asked the agent if you're running from a
8   bear, and the bear disappears, are you going to keep running?
9   That's kind of the analogy here.
10          And I think the Court understands my point, albeit
11  you know, the sarcasm that for me is a little inappropriate, so
12  I apologize.
13          THE COURT:  I usually don't hear about bears in
14  connection with detention hearing, so it was -- it is a novel
15  argument.
16          MR. AKERS:  I'm just a gigantic teenager if I'm being
17  honest, but the reality is that there's a possibility here that
18  he really has nothing to run from.
19          And the Court determined years ago that he has
20  no -- frankly no risk of running that is unreasonable for the
21  Court to understand his appearance at trial.
22          And that has only continued throughout -- in these
23  last two years.  It's only gotten better for the Defense.  As
24  Your Honor noted, he has less ties in Nigeria.  He has
25  significantly, and when I say significantly, Judge,

1   significantly less assets than when he started.

2            His financial situation is in ruin with home defaults
3   and his medical practice completely being decimated and gone,
4   and not to mention certain legal bills that his lawyer is not
5   requesting from him because of this financial situation that
6   has happened.

7            It's -- it is literally only changed for the better.
8   It has literally only changed to show that Dr. Adeoye is a not
9   a flight risk.

10           And finally, you know, as we all know in criminal
11  cases in federal court, usually the evidence gets better for
12  the Government, not worse.

13           Here, we have it's over time we've had Agent Mathews
14  now talk about the tolling that they keep bringing up.  At the
15  original detention hearing, we heard that there were over 50
16  tolls between Dr. Adeoye and the co-defendant Edgal Iribhogbe,
17  who is the only person that he has contact with in this whole
18  case.

19           But if you really analyze those exhibits the
20  Government submitted, you'd see that there's approximately 15
21  to 20 percent answered or returned calls.  Everything else is
22  Edgal Iribhogbe calling and calling and calling or texting and
23  texting and texting without any semblance of a response.

24           And I'm happy the Court clued into that early on
25  because I think that's important as well to show that this is

1    not a two-way conversation.  This is a bugging and bugging and
2    bugging.
3            The -- Ms. Rattan brings up the lawsuit going on with
4    the home.  The point of the lawsuit going on with the home is
5    that Dr. Adeoye does not have access to those funds.
6            The allegation that these are the people that we were
7    relying upon to show stability, that's completely false.  This
8    Carlene Williams (phonetic) person that was -- sold the house
9    to is a completely new player in all of this.
10           Gertrude Florent, his power of attorney, and the
11   Court's and Pre-trial's approved third-party custodian is doing
12   her best to kind of shepherd his financial situation and do
13   everything she can to help who she believes and as the Court
14   heard is in fact a good person.
15           There's no reason to flee here.  The Court can
16   absolutely with certainty know that he will reasonably appear
17   at -- this man has been in custody 20 months on a $43,000 loss
18   amount.
19           And I think it's time for him to return home with
20   third-party custodian with whatever conditions the Court deems
21   appropriate because even if, even if he is convicted tomorrow,
22   there is a substantial likelihood that he has already paid his
23   debt.  I think the -- there is no risk of flight.  And Dr.
24   Adeoye should be allowed on bond.
25           THE COURT:  Thank you.

1        Ms. Rattan, anything further from the Government?

2        MS. RATTAN:  No, thank you, Your Honor.

3        THE COURT:  All right.  All right, everyone, I'm
4   going to go ahead and note again for purposes of the record
5   Docket 683 is Judge Johnson's order.  By and through that, she
6   ordered that the matter of detention should be re-opened and
7   that the Motion to Re-open should be granted.

8        And as a result, before this Court here today is the
9   issue of detention.  The Court has thoroughly reviewed Judge
10  Mazzant's order reversing my initial release decision being
11  Docket 403.

12       In connection with Judge Mazzant's reversal, he
13  relied in part on two things, the Defendant's parents and two
14  of his four siblings resided in Nigeria.

15       The Court will note at this juncture the evidence
16  received is that Segun Adeoye's father has passed away and his
17  number of contacts in Nigeria has been reduced as a result of
18  that.

19       As well, Judge Mazzant found the evidence had been
20  presented that he had access to substantial assets and cash.
21  Based upon the evidence that's before me, I find that he -- it
22  appears that he has significantly less assets and cash that he
23  could use to flee.

24       As well, certainly, it has been argued that the
25  Defendant is approaching time served after the likely

1   application of the Sentencing Guidelines.

2           I find each and every one of those circumstances

3   differentiates and justifies a different decision made than

4   Judge Mazzant.

5           In Docket 403, Judge Mazzant directed me to have the

6   hearing today.  And after reviewing exhaustively the reasons he

7   felt that this Defendant should be detained, I do think that

8   there is sufficient justification to find that there are

9   differences from that time and that he should be released at

10  this juncture.

11          So that would be this Court's determination that Mr.

12  Adeoye should be released pending any trial.

13          I'm going to go ahead and hear from the parties at

14  this juncture regarding the Court's decision.

15          MS. RATTAN:  Thank you, Your Honor.  We would object

16  of course.  And we would request that the Court stay its order

17  to give us an opportunity to appeal to the district court.

18          THE COURT:  All right, and so just to confirm, again,

19  the Government is going to appeal the decision that I've made

20  here today.  You're asking for me to stay the order of release

21  until such time as Judge Mazzant can hear this matter.  Is that

22  correct?

23          MS. RATTAN:  Yes, thank you.

24          THE COURT:  All right, and Mr. Akers, are you

25  objecting?

1           MR. AKERS:  I'd object to the Court -- their motion
2    to stay the order.  I understand that that's your general
3    practice, so it's your courtroom, Judge.
4           THE COURT:  All right, so I'm going to follow our
5    usual practice just as we did in connection with the initial
6    detention hearing.  So I'm noting that the Government has
7    appealed or intends to appeal.  I'm going to grant the request
8    to stay.
9           The Government will need to file its formal appeal.
10   If I give you until Friday, Ms. Rattan, that's going to be June
11   the 2nd at 5:00 p.m.  Will that be sufficient?
12          MS. RATTAN:  Yes, thank you.
13          THE COURT:  All right, so we'll get that formal
14   appeal on file no later than Friday, June 2nd.  The Court stays
15   its order of release to allow the Government an opportunity to
16   file that Notice of Appeal.
17          We'll notify Judge Mazzant's chambers that you all
18   are going to be requesting a hearing for him.
19          Is there anything further, Ms. Rattan?
20          MS. RATTAN:  No, thank you.
21          THE COURT:  Mr. Akers, sir?
22          MR. AKERS:  It's my understanding the Court has
23   issued an order that the transcript be prepared?
24          THE COURT:  Well, I have not issued an order, but I
25   am going to requesting that the transcript be prepared and be

1    provided to both the Government and Defense counsel both from
2    the initial detention hearing, as well as argument today and
3    this Court's ruling, so that Judge Mazzant will have that in
4    his -- connection with his consideration.
5            And I guess to that end, let me go ahead and just
6    further -- in connection with Docket 403, in particular, the
7    Court's attention was drawn to and I reviewed exhaustively
8    pages 6, 7, and then again page 9.  And that is why the Court
9    felt that there were enough differentiating circumstances to
10   justify my determination to release here today.
11           Anything further, Mr. Akers?
12           MR. AKERS:  No, Your Honor.
13           THE COURT:  All right.
14           MR. AKERS:  Thank you for your time.
15           THE COURT:  All right, sir, I just want to advise
16   you, I'm ordering you released here today, but I am the
17   magistrate judge.  And because the Government has appealed,
18   we're going to send you before the district judge for a further
19   hearing at this time before the district court.  And so, you
20   will be held in custody until such time as the district court
21   is able to hear this matter, okay?
22           Ms. Rattan, anything further that we should put on
23   the record at this time?
24           MS. RATTAN:  No, thank you.
25           THE COURT:  Mr. Akers?

1        MR. AKERS:  No, Your Honor.
2        THE COURT:  All right, thank you so much.  Both of
3   you are excused at this time.
4        (Proceedings concluded at 11:26 a.m.)

**CERTIFICATE**

I, Chris Hwang, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.

_____    June 3, 2023

Chris Hwang                Date

Court Reporter