IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| v. | § | No. 4:21-CR 253 |
| | § | Judge Mazzant |
| KINGSLEY ITA (1) | § | |
| a.k.a. "Baron" "Sifk" | § | |
| IRABOR FATARR MUSA (2) | § | |
| a.k.a. "Fatai" "Head JJ" | § | |
| ███████████████ | § | |
| ███████████████ | § | |
| ███████████████ | § | |
| SOLOMON ESEKHEIGBE (5) | § | |
| SANDRA IRIBHOGBE POPNEN (6) | § | |
| a.k.a. "General" "Santos" | § | |
| EDGAL IRIBHOGBE (7) | § | |
| a.k.a. "Oseme" | § | |
| DAMILOLA KUMAPAYI (8) | § | |
| a.k.a. "Luke Morris" "Lil unc unc" | § | |
| ███████████████ | § | |
| EHIEDU ONYEAGWU (10) | § | |
| a.k.a. "Young" | § | |
| SEGUN ADEOYE (13) | § | |
| CHIDINDU OKEKE (14) | § | |
| a.k.a. "Steve" "Gerard" | § | |
| NGOZI OKEKE (15) | § | |
| ███████████████ | § | |
| NOSOREGBE ASEMOTA (17) | § | |
| a.k.a. "Patrick Asemota" | § | |
| CHIGOZI EKWENUGO (18) | § | |
| a.k.a. "Gozie" | § | |
| OSARETIN EGHAGHE (22) | § | |
| a.k.a. "Biggie" | § | |
| EJIRO OHWOVORIOLE (23) | § | |
| ISAAC ASARE (24) | § | |
| a.k.a. "Asarko" | § | |
| GOLD UDE (26) | § | |

HENRIETHA OZIEGBE (27)                §
   a.k.a. "Henrientha" "Hetty"        §
CHIAGOZIEM KIZITO OKEKE (29)          §
   a.k.a. "Alex"                      §
EBERE PETER OMEIRI (30)               §

## SECOND SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Count One

> Violation: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

1.    From in or around January 2017, and continuing the date of this Second Superseding Indictment, in the Eastern District of Texas and elsewhere, the defendants,



**Kingsley Ita**
"Baron" "Sifk"
**Irabor Fatarr Musa**
"Fatai" "Head JJ"
■■■■■■■■■
"■■■■■■"
"■■■"
**Solomon Esekheigbe**
**Sandra Iribhogbe**
"General"
"Santos"
**Edgal Iribhogbe**
"Oseme"

**Damilola Kumapayi**
"Luke Morris"
"Lil unc unc"
■■■■■■■■■
**Ehiedu Onyeagwu**
"Young"
**Segun Adeoye**
**Chidindu Okeke**
"Steve"
"Gerard"
**Ngozi Okeke**
■■■■■■■■■
**Nosoregbe Asemota**
"Patrick Asemota"

**Chigozi Ekwenugo**
"Gozie"
**Osaretin Eghaghe**
"Biggie"
**Ejiro Ohwovoriole**
**Isaac Asare**
"Asarko"
**Gold Ude**
**Henrietha Oziegbe**
"Henrientha" "Hetty"
**Chiagoziem Kizito Okeke**
"Alex"
**Ebere Peter Omeiri**

along with Peter Ude, Bukola Obaseki, Stella Hadome, Jequita Batchelor, Kingsley Oziegbe, Benedicta Atakare, Mathew Okpu and others both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1343, wire fraud, that is to transmit and cause to be transmitted by

means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent material pretenses, representations, and promises.

## Overview of the Conspiracy

2.      The defendants used a multitude of fraudulent schemes to unlawfully obtain money from their victims, including online romance scams, business email compromise and investor fraud, healthcare and prescription fraud, and unemployment insurance fraud. The defendants not only coordinated how to receive money from victims, but also how to disguise, disburse, and launder that money once victims were defrauded.   Through their fraudulent conduct, the defendants obtained millions of dollars from individual victims, companies, and government entities.   Because the fraudulent activity occurred using the internet, the mail services, and domestic and international banking systems, the defendants transmitted and caused to be transmitted wire transmissions affecting interstate and foreign commerce.

## Purpose of the Conspiracy

3.      It was the general purpose of the conspiracy for the defendants to unlawfully obtain and send money to co-conspirators in the United States and overseas by means of materially false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Conspiracy

4.     The manner and means by which the defendants sought to accomplish the purpose of the conspiracy included, among others, the following:

a.  The defendants and their co-conspirators used virtual private networks (VPNs) and other similar tools to mask the locations from which they were conducting their fraudulent activity;

b.  The defendants and their co-conspirators communicated with each other by phone, Whatsapp text message, in-person meetings, and email regarding their fraudulent conduct;

c.  The defendants and their co-conspirators received money from victims who fell prey to a variety of deceptive schemes, including romance scams, business email compromises and investor fraud, healthcare and prescription fraud, and unemployment insurance fraud;

d.  The defendants and their co-conspirators received money from victims in various forms, including wire transfers, cash, and cashier's checks;

e.  The defendants and their co-conspirators used hundreds of financial accounts, oftentimes in a business name or another individual's name, for the purpose of depositing, withdrawing, and transferring victim money;

f.  The defendants and their co-conspirators operated, or created and registered, domestic and international businesses, such as shipping companies, logistics companies, and medical businesses and clinics.  This legitimized and assisted in the execution of their fraudulent scheme;

g.  The defendants and their co-conspirators shared business and residential addresses with each other to coordinate mailings and the receipt of victim funds;

h.  The defendants and their co-conspirators sent victim money to bank accounts, co-conspirators, and businesses located in the United States, Africa, and Asia;

i.  The defendants and their co-conspirators lied regarding their marriage and immigration status so that they could illegally stay in the United States to further their scheme; and

j.  The defendants and their co-conspirators caused wire transmissions that affected

interstate and foreign commerce.

### Representative Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy, the following acts, among others, were

committed in the Eastern District of Texas and elsewhere:

#### *The Communications*

5.    The defendants and their co-conspirators communicated via Whatsapp, in-
person meetings, phone calls, and text messages.    During these discussions, the
defendants and their co-conspirators discussed, among other topics, the timing of deposits
and transfers, victim information, and account identifiers. For instance:

a.    On or about September 13, 2020, a co-conspirator told **Sandra Iribhogbe**: "Older women.    All this fake love matter…They will put it there and they get the women to get out the money.    These are different ways and they are new things."    On or about September 15, 2020, while discussing sham businesses with another co-conspirator, **Sandra Iribhogbe** boasted that she did extensive "419" (also known as Nigerian letter fraud).

b.    On or about September 7, 2020, **Ehiedu Onyeagwu** and **Sandra Iribhogbe** discussed opening bank accounts and using "fishing" as a cover for their fraudulent activity.    During the conversation, **Onyeagwu** stated that once he opened the account, he would "explain to the bank right there that [I] am going to be doing a lot of foreign transaction so you people are aware, [I] am going to be doing some incoming and outgoing transfers."    **Onyeagwu** then agreed to tell the bank that the transactions will be related to "fish."

c.    On or about October 6, 2020, **Sandra Iribhogbe** told **Kingsley Oziegbe** that they "just sent 50 thousand for fish."    **Kingsley Oziegbe** affirmed interest in the fraudulent enterprise by saying: "I really want to venture into the side of making this bureau exchange thing like a constant thing, not something I just do from time to time."

d.    On or about October 14, 2020, **Sandra Iribhogbe** explained to ███████ ███ how funds were not being disbursed because of bank freezes and charges.    ████████ requested **Sandra Iribhogbe** send her ██████████

account information as an alternative destination bank account and further asked if money can be sent to **Henrietha** and **Kingsley Oziegbe** and moved from there.

e.  On or about May 5, 2020, **Irabor Musa** texted and provided his bank account information to a co-conspirator.   On or about May 15, 2020, the co-conspirator forwarded **Musa's** bank account information to ███████ for purposes of receiving money from a victim with initials S.H.   On or about May 17, 2020, after receiving the victim funds, ████ texted S.H.'s identification information back to the co-conspirator so that **Musa** could identify the source of the deposit in his bank account.

f.  On or about May 13, 2020, a co-conspirator texted **Kingsley Ita** asking for bank accounts to "drop 20-30k a day."   **Ita** responded by asking the co-conspirator to provide a percentage of the proceeds.   On or about May 15, 2020, the co-conspirator texted **Ita** that the deposits would be tied to unemployment fraud and that the percentages would be "50/50."  **Ita** responded that same day, "Ok I go send to my guy."

g.  On or about April 23, 2019, in the Eastern District of Texas, **Osaretin Eghaghe** and **Ejiro Ohwovoriole** met with others in the Eastern District of Texas to discuss the logistics of business email compromise schemes, percentage cuts, and account transfers.   On or about July 16, **Eghaghe** requested bank account information to transfer funds obtained from an upcoming business email compromise scheme.   In or around September 2019, when asked about the status of the fraudulent funds, **Eghaghe** responded that he acquired $301,000 from the victim company but that the transaction was blocked by the financial institution.

h.  On or about September 11 and 18, 2018, at approximately 8 PM on both dates, **Nosoregbe Asemota** and **Sandra Iribhogbe** met for a few minutes in the parking lot of a gas station located in McKinney, Texas, in the Eastern District of Texas.   On June 8, 2020, **Asemota** explained to a co-conspirator that he planned to pay off debts to **Sandra Iribhogbe** through "transactions."

i.  Between in or around May 2020 to September 2020, **Chidindu Okeke** (a/k/a "**Steve**" or "**Gerard**") romantically lured a bank employee to register a business name, open multiple bank accounts, and help move money through those accounts.   On or about September 28, 2020, when discussing a specific BBVA bank account, **Chidindu Okeke** instructed the employee to withdraw "9800 or 9900" and not do "10k again" in order to avoid detection.

j. On or about September 21, 2021, **Chiagozem Okeke** (a/k/a "**Alex**") and **Chidindu Okeke** (a/k/a "**Steve**" or "**Gerard**") discussed "dating" and a third individual who was doing too much by "asking for 40 percent."

### *The Fraudulent Schemes*

**Romance Fraud Targeting Individuals**

6.    During the course of the conspiracy, the defendants and their co-conspirators fabricated identities and back stories to lure victims to send money.    These included lies about who the victim was actually communicating with, lies about their interest or friendship with the victim, and lies about why the victim needed to send money.    For example, one victim with initials J.R. was approached through an online dating site by an individual named "Russell Hall."    Over the course of five months, Hall represented to J.R. that he was romantically interested in J.R., that he was an international civil engineer, and that his work was taking him to South Africa.    Eventually, Hall requested J.R. send him $50,000 for unanticipated "port fees" related to his job, and then asked for another $80,000 to pay for new equipment for his work.    All these representations were false.

7.    Acting on these lies, J.R. and other similarly situated victims sent money— via cash, cashier's check, wire, or other means—to the defendants or financial accounts controlled by the defendants and their co-conspirators.    Once in receipt of the victim funds, the defendants engaged in a series of financial transactions to pay each other, transfer money internationally, and disguise the source of their proceeds.    For instance:

a. On or about October 25, 2019, victim J.R. wired $80,000 to **Mathew Okpu** and **Benedicta Atakare's** Bank of America business account ending in 4369 (BOA 4369).    Between October 28 and October 31, 2019, **Okpu** and **Atakare** withdrew approximately $56,000 in cash from the same BOA 4369 account.

On or about October 30, 2019, **Sandra Iribhogbe** notarized and executed a document with the bank assuming responsibility for the $80,000 wire transfer from J.R.    On or about November 19, 2019, **Edgal Iribhogbe**, Sandra's husband, made two cash deposits totaling approximately $52,150 into his own Regions Bank account ending in 2452.    Two days later, on or about November 21, 2019, **Edgal Iribhogbe** transferred approximately $52,000 to a Thai bank account in the name of "H V Plas Co."    On or about May 15, 2020, **Edgal Iribhogbe** withdrew three cashier's checks payable to **Segun Adeoye** totaling approximately $43,000.    On or about May 27, 2020, **Adeoye** wired $43,000 from his Chase Bank account ending in 0603 to a Japanese bank account in the name of "Kyokuyo Co. Ltd."

b. On or about November 24, 2017, a victim with initials S.M. wired $15,000 to **Damilola Kumapayi's** Bank of America account ending in 6298 (BOA 6298). Three days later, on or about November 27, 2017, **Kumapayi** wired $2,650 from his BOA 6298 account to **Henrietha Oziegbe's** JP Morgan Chase account ending in 6870.    On or about February 9, 2021, the same victim with initials S.M., following instructions from the same alleged love interest, wired $970 to **Ngozi Okeke's** Wells Fargo account ending in 3231.

c. On or about December 9, 2019, a victim with initials M.W. wired approximately $2,350 to **Isaac Asare's** JP Morgan Chase account ending in 0790. Approximately two days later, on December 11, 2019, $2,000 of money orders were issued to ▮▮▮▮▮▮▮▮ and **Ngozi Okeke's** Bank of America business account ending in 6138, under the business name "Celdon Group LLC."

d. On or about July 15, 2020, a victim with initials R.D. wired $48,000 to **Isaac Asare's** business Wells Fargo account ending in 2095.    Between on or about July 15 and 18, 2020, **Edgal Iribhogbe** purchased approximately $47,769 of cashier's checks payable to Neco Corporation, a business in the name of **Peter Ude** and **Gold Ude**.    Approximately one month later on August 20, 2020, **Peter Ude** and **Gold Ude** wired $47,719 to a Japanese bank account in the name of "Kyokuyo Co. Ltd."

e. On or about January 29, 2020, a victim with initials T.W., wired $9,000 to **Solomon Esekheigbe's** First Service Credit Union account ending in 6850. On or about January 30 and 31, 2020, **Esekheigbe** sent approximately $21,000 to **Sandra Iribhogbe** using foreign bank accounts set up in Nigeria.    On or about February 10, 2020, **Sandra Iribhogbe** deposited $15,000 of cash into ▮▮▮▮▮▮▮▮▮▮▮ Bank of America account ending in 6723.    On or about October 5, 2020, ▮▮▮▮▮ transferred $50,000 from his Bank of America account

ending in 6723 to a Chinese account in the name of "Seapride Frozen Food Co. Ltd."

f. On or about June 18, 2018, a victim with initials B.W. wired $40,000 to **Nosoregbe Asemota's** Capital One Bank business account ending 7051. On or about June 22 and 26, 2018, the same victim B.W. sent $40,000 to **Chigozi Ekwenugo's** Bank of America business account ending in 3701.

**Corporate Fraud Targeting Businesses and Investors**

8. In addition to defrauding individuals through romance scams, the defendants and their co-conspirators also obtained money through schemes targeting companies and businesses. In one instance, a business investor with initials M.G. entered into a contract for payments toward jet fuel storage related to Shelfneftegaz Refinery. Although the refinery existed and the business purpose appeared legitimate, M.G.'s company received an invoice and wire instructions for payments from a financially fraudulent and blacklisted entity operated by the defendants and their co-conspirators—OMSK Tank Farm.

9. Having fraudulently acquired funds from M.G. and other business investors, the defendants engaged in a series of financial transactions. For example:

a. On or about October 5, 2017 a business investor with initials R.P wired $30,000 to **Jequita Batchelor's** Capital One business account ending 1706. On or about October 6, 2017, **Batchelor** withdrew cashier's checks totaling $24,000 payable to **Bukola Obaseki**, who subsequently deposited it in **Obaseki's** Comerica business bank account ending 0508. Then, on or about October 24, 2017, **Obaseki** wired $24,500 from her Comerica account ending in 0508 to Temrex Nigeria Limited.

b. On or about January 22, 2018, a business investor with the initials M.G. wired $44,800 to **Obaseki's** Capital One business bank account ending 7599. Between on or about January 30 and February 1, 2018, **Obaseki** withdrew a cashier's check and wrote checks totaling $34,200 payable to **Stella Hadome**. On or about February 2, 2018, **Hadome** wired $24,850 from her JP Morgan Chase bank

account ending in 1373 to a Nigerian bank account in the name of Temrex Nigeria Limited.

**Prescription and Healthcare Fraud**

10.    The defendants also used healthcare businesses to further their fraud and money laundering scheme, such as medical clinics that fraudulently prescribed medications and narcotics to patients.   For instance, one of the defendants, a doctor named **Segun Adeoye**, operated a family medicine clinic in the Houston area.   Despite not being board certified or registered as a pain management specialist, **Adeoye** wrote at least 5,500 controlled substance prescriptions, including opiates, between approximately 2019 and 2021.   Adeoye's rate of opiate prescription was approximately 400% greater than the typical family medicine doctor, and approximately 140% greater than the typical pain management specialist.   In messaging with co-conspirators, **Sandra Iribhogbe** identified **Segun Adeoye** as being available for the receipt of fraudulently obtained proceeds.

**Unemployment Insurance Fraud Targeting Government Funds**

11.    The defendants also targeted government funds earmarked for individuals who are unable to work, transitioning between jobs, or affected by the global pandemic. The defendants or their co-conspirators prepared and sent fraudulent applications to various state entities administering the unemployment insurance benefit programs.   Believing that the applications were submitted by individuals who actually qualified for the program benefits, the government entities issued ACH deposits and directed prepaid debit cards to be issued to the defendants and co-conspirators, depositing funds in the listed bank accounts or directing prepaid debit cards to be mailed to the addresses listed on the

applications.    Consistent with their other fraud schemes, the defendants engaged in a series of financial transactions once they obtained the government funds.

    a.  For instance, in or around August 2020, the State of Nevada authorized Bank of America to send prepaid debit cards to various individuals whom they deemed eligible for unemployment insurance benefits.    In or around August 2020, Bank of America accordingly sent prepaid debit cards to a residential address on Jupiter Road, in Allen, Texas, in the Eastern District of Texas, registered to **Edgal Iribhogbe**.    On multiple occasions in August and September 2020, **Damilola Kumapayi,** cashed the prepaid debit cards at ATM machines located in the Eastern District of Texas.    On or about August 5, 2020, **Sandra Iribhogbe** sent multiple envelopes containing cash to **Ehiedu Onyeagwu**, and later, on or about September 4, 2020, **Sandra Iribhogbe** sent approximately $35,000 to **Onyeagwu**.

12.    Because the defendants' scheme involved handling, receiving, and depositing money from victims in the United States, the defendants had to physically reside in the United States.    However, several defendants did not obtain lawful status to reside as a permanent resident in the United States.    Instead, the defendants and co-conspirators entered into unlawful and fraudulent marriages with United States citizens, lied on United States immigration forms, and overstayed government-issued visas.

All in violation of 18 U.S.C. § 1349.

## Count Two

Violation: 18 U.S.C. § 1956(h)
(Conspiracy to Commit Money
Laundering)

13.    Paragraphs 1 through 12 of Count 1 of this Second Superseding Indictment are realleged and incorporated by reference as though fully set forth herein, as constituting and describing the defendants' fraudulent scheme.

14.    Beginning in or around January 2017 and continuing through the date of this Second Superseding Indictment, in the Eastern District of Texas and elsewhere, the defendants



**Kingsley Ita**
"Baron" "Sifk"
**Irabor Fatarr Musa**
"Fatai" "Head JJ"
▮▮▮▮▮▮▮ "▮▮▮"
"▮▮▮▮▮
**Solomon Esekheigbe**
**Sandra Iribhogbe**
"General"
"Santos"
**Edgal Iribhogbe**
"Oseme"

**Damilola Kumapayi**
"Luke Morris"
"Lil unc unc"
▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
**Ehiedu Onyeagwu**
"Young"
**Segun Adeoye**
**Chidindu Okeke**
"Steve"
"Gerard"
**Ngozi Okeke**
▮▮▮▮▮▮▮▮▮
**Nosoregbe Asemota**
"Patrick Asemota"

**Chigozi Ekwenugo**
"Gozie"
**Osaretin Eghaghe**
"Biggie"
**Ejiro Ohwovoriole**
**Isaac Asare**
"Asarko"
**Gold Ude**
**Henrietha Oziegbe**
"Henrientha" "Hetty"
**Chiagoziem Kizito Okeke**
"Alex"
**Ebere Peter Omeiri**

along with Peter Ude, Bukola Obaseki, Stella Hadome, Jequita Batchelor, Kingsley Oziegbe, Benedicta Atakare, Mathew Okpu and others both known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to commit offenses against the United States in violation of Title 18, United States Code, Section 1956, to wit:

a.  to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18 United States Code Section 1343 and 1349, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.  to transport, transmit, and transfer, and attempt to transport, transmit, and transfer a monetary instrument or funds involving the proceeds of specified unlawful activity, that is, wire fraud in violation of Title 18 United States Code Section 1343 and 1349, from a place in the United States to or through a place outside the United States, knowing that the funds involved in the transportation, transmission, and transfer represented the proceeds of some form of unlawful activity and knowing that such transportation, transmission, and transfer was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

All in violation of 18 U.S.C. § 1956(h).

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE

1.     The allegations contained in Count One and Count Two are hereby realleged and incorporated by reference as though fully set forth herein for the purpose of alleging forfeitures to the United States of America of certain property in which the defendants have an interest.

2.     Upon conviction of any violation of 18 U.S.C. § 1349, the defendants shall forfeit to the United States any property, real or personal, that constitutes or is derived from proceeds traceable to a violation of any offense constituting "specified unlawful activity," or a conspiracy to commit such offense, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and, pursuant to 18 U.S.C. § 982, any proceeds or property, real or personal, involved in a violation of 18 U.S.C. 1956(h) including but not limited to the following:

All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located in Collin County, Texas at **706 S. Jupiter Road #1705, Allen, Texas 75002**, more fully described as Unit No. 1705, in Building 1700, and its appurtenant undivided interest in and to the general and limited common elements of THE CHATEAUX OF ALLEN TOWNHOMES, a condominium regime in the City of Allen, Collin County, Texas, according to the Condominium Declaration, dated August 1, 2000, recorded in/under Volume 5004, Page 1452 of the Real Property Records of Collin County, Texas and First Amendment to Declaration and Master Deed recorded in Volume 5056, Page 7525, refiled in Volume 5062, Page 68, and Second Amendment recorded in Volume 5294, Page 4652, and Third Amendment recorded in Volume 5871, Page 556, and Fourth Amendment recorded under Clerk's File Nos. 20061227001815600, 20111011001085510, Seventh Amendment recorded in Clerk's File No. 20120423000466440, and Eighth Amendment recorded in Clerk's File No. 20120928001228790, when taken with all Amendments and/or Supplements thereto.  Commonly known as: 706 S. JUPITER ROAD, #1705, ALLEN, TEXAS 75002.

All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located in Collin County, Texas at **706 S. Jupiter**

**Road #1806, Allen, Texas 75002**, more fully described as UNIT 1806, THE CHATEAUX OF ALLEN TOWNHOMES, CITY OF ALLEN, A CONDOMINIUM PROJECT IN COLLIN COUNTY, TEXAS, TOGETHER WITH THE LIMITED COMMON ELEMENTS, AND AN UNDIVIDED INTEREST IN AND TO THE GENERAL COMMON ELEMENTS, AS SAME ARE DEFINED IN THE CONDOMINUM DECLARATION THEREOF, IN VOLUME 5004, PAGE 1452, VOLUME 5058, PAGE 7525, VOLUME 5062, PAGE 68, VOLUME 5294, PAGE 4652, VOLUME 5726, PAGE 5735, VOLUME 5871, PAGE 556, COUNTRY CLERK'S FILE NOS. 20061227001815600, 20111011001085510, 20120423000466440 AND 20140423000389390, OFFICIAL PUBLIC RECORDS, COLLIN COUNTY, TEXAS.

All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located in Collin County, Texas at **1510 Riverdale Drive, Allen, Texas 75013**, more fully described as CUMBERLAND CROSSING PHASE I, BLKH, LOT 5.

All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located in Collin County, Texas at Real Property located at 1015 Blackenhurst, Allen, TX more fully described as: BEING LOT 12, BLOCK B, SHADOW LAKES NORTH, AN ADDITION TO THE CITY OF ALLEN, COLLIN COUNTY, TEXAS, ACCORDING TO THE PLAT THEREOF RECORDED IN VOLUME 1, PAGE 139, OF THE MAP RECORDS, OF COLLIN COUNTY, TEXAS seized from **Bukola Obaseki**.

All that lot or parcel of land, together with buildings, improvements, fixtures, attachments and easements located in Collin County, Texas at Real Property located at 706 S. Jupiter #707, Allen, Texas more fully described as: Unit 707, Building 700 (sometimes also referred to as Building 7), of THE CHATEAUX OF ALLEN TOWNHOMES, City of Allen, A condominium project in Collin County, Texas, together with the limited common elements, and an undivided interest in and to the general common elements, as same are defined in the Condominium Declaration thereof, in Volume 5004, Page 1452, Volume 5058, Page 7525, Volume 5062, Page 68, Volume 5294, Page 4652, Volume 5871, Page 556, County Clerk's File Nos. 20061227001815600, 20111011001085510 and 20120423000466440, Official Public Records of Collin County, Texas seized from **Edgal Iribhogbe**

2017 Blue Bentley bearing VIN # SJAAC2ZV3HC015206 seized from **Ejiro Ohwovoriole;**

2020 Blue Mercedes Benz bearing VIN # 4JGFB4JE9LA226618 seized from **Ejiro Ohwovoriole;**

2019 White Mercedes Benz bearing VIN # WDD3G4EB1KW007944 seized from **Ejiro Ohwovoriole;**

**A**pproximately $7.69 US currency seized from **Ejiro Ohwovoriole;**

Approximately $10.25 US currency seized from **Ejiro Ohwovoriole;**

Approximately $3.88 US currency seized from **Ejiro Ohwovoriole;**

Approximately $573.00 US currency  seized from **Ejiro Ohwovoriole;**

Approximately $964.00 US currency  seized from **Ejiro Ohwovoriole;**

Miscellaneous gold colored jewelry (rings, earrings, bracelets, necklaces) seized from **Ejiro Ohwovoriole;**

Miscellaneous gold colored jewelry (rings, earrings, bracelets, necklaces) seized from **Ejiro Ohwovoriole;**

Approximately 21 gold colored necklaces; 1 silver colored necklace, 1 rose gold colored Rolex watch seized from **Ejiro Ohwovoriole;**

Black case containing 2 pairs of gold colored earrings; 1 gold colored ring; 1 gold colored necklace seized from **Ejiro Ohwovoriole;**

Clear plastic case container containing gold colored necklaces, bracelets, and jewelry pieces; small clear plastic container containing gold colored earrings, bracelets and jewelry seized from **Ejiro Ohwovoriole;**

Miscellaneous gold colored jewerly (necklaces, pendants, earrings) seized from **Ejiro Ohwovoriole;**

10 watches; 1 silver colored necklace; 1 silver colored chain; 1 silver colored crucifix; 1 gold colored necklace; 1 silver colored bracelet seized from **Ejiro Ohwovoriole;**

Miscellaneous necklaces and pendants (gold in color) seized from **Ejiro Ohwovoriole;**

1 Watch (silver in color with a black band) marked "Rolex;" 1 Silver colored necklace with clear stones seized from **Ejiro Ohwovoriole;**

1 Watch marekd "Rolex" seized from **Ejiro Ohwovoriole;**

Approximately 33 assorted money cards (visa debit, apple gift, green dot, walmart visa) seized from **Ejiro Ohwovoriole;**

2018 BMW bearing VIN # WBA7F0C56JGM24017 seized from **Osaretin Eghaghe;**

Approximately 40 money/value cards (My Vanilla Visa, Green Dot Visa, Nordstrom, Verizon) seized from **Osaretin Eghaghe**;

$15.49 US currency seized from Eghaghe's BMW seized from **Osaretin Eghaghe;**

$707.00 US currency seized from **Osaretin Eghaghe;**

Three (3) .45 caliber magazines seized from **Osaretin Eghaghe;**
Smith & Wesson, S&W 500 Revolver, SN:   DMX9932, with muzzle bracket seized from **Osaretin Eghaghe;**

Smith & Wesson SW 1911 9mm handgun, SN:   UFC8578, with two empty magazines seized from **Osaretin Eghaghe;**

CZ 75B 9mm handgun, serial number A388963 seized from **Osaretin Eghaghe;**

Rock Island XTM-22 .22 caliber handgun, SN:   XTM009855, with one empty magazine seized from **Osaretin Eghaghe;**

5lbs Cinco Pesos, 1 real currencies (converted to approximately $7.25 US currency) seized from **Chigozi Ekwenugo;**

$6,430.00 US currency seized from **Chigozi Ekwenugo;**

$227.00 US currency seized from **Chigozi Ekwenugo;**

BBVA cashier's check in the amount of $18,804.00 seized from **Chigozi Ekwenugo;**

Nigerian Naira currency (amount unknown at this time) seized from **Chigozi Ekwenugo;**

$18,000.00 US currency seized from **Chigozi Ekwenugo;**

BBVA Cashier's Check in the amount of $9,500.00 seized from **Stella Hadome**;

$391.81 seized from Prosperity Bank account 219971723 seized from **Stella Hadome**;

$6,984.94 seized from Prosperity Bank account 70209739 seized from **Stella Hadome**;

$1,095.85 seized from Prosperity Bank account 219971979 seized from **Stella Hadome**;

37 assorted money/value cards seized from **Stella Hadome**;

$50.00 in UAE Dirham (converts to approximately $13.61 USC) seized from **Peter/Gold Ude**;

$9,830.00 in Nigerian Naira (converts to approximately $23.83 USC) seized from **Peter/Gold Ude**;

$2,291.40 seized from Bank of America account xxxxxxxx7373 seized from **Peter/Gold Ude**;

$1,121.42 seized from Bank of America account xxxxxxxx3967 seized from **Peter/Gold Ude;**

$270.25 US currency seized from **Peter/Gold Ude**;

$2,580.00 US currency seized from **Irabor Fatarr Musa**;

33 assorted money/value cards seized from **Irabor Fatarr Musa;**

78 assorted money/value cards seized from **Sandra Iribhogbe Popnen** and **Edgal Iribhogbe**;

4 containers containing gold colored jewelry seized from **Sandra Iribhogbe**

**Popnen** and **Edgal Iribhogbe;**

$51.30 seized from PNC Bank account xxxxx1104 seized from **Sandra Iribhogbe Popnen** and **Edgal Iribhogbe;**

$6,133.86 seized from PNC Bank account xxxxxx0045 seized from **Sandra Iribhogbe Popnen** and **Edgal Iribhogbe;**

$35.04 seized from Regions Bank account xxxxx4940 seized from **Sandra Iribhogbe Popnen** and **Edgal Iribhogbe;**

$13,550.66 seized from Texas Credit Untion account xxxxxxx6313 seized from **Sandra Iribhogbe Popnen** and **Edgal Iribhogbe;**

$550.62 seized from Wells Fargo Bank account xxxxxx0966 seized from **Sandra Iribhogbe Popnen** and **Edgal Iribhogbe;**

$50.16 seized from BancorpSouth account number ending in 5536 seized from **Sandra Iribhogbe Popnen** and **Edgal Iribhogbe;**

Approximately $16,063.00 US currency seized from **Segun Adeoye;**

Approximately $1,946.00 US currency seized from **Segun Adeoye;**

Two (2) Cashier's Checks in the amount of $10,000.00 each seized from **Segun Adeoye;**

One (1) Cashier's Check in the amount of $18,200.00 seized from **Segun Adeoye;**

Miscellaneous debit/credit cards seized from **Segun Adeoye;**

One (1) Cashier's Check in the amount of $4,000.00 seized from **Segun Adeoye;**

One (1) Cashier's Check in the amount of $14,000.00 seized from **Segun Adeoye;**

$52,393.72 seized from Bank of America account xxxxxxx2724 seized from **Segun Adeoye;**

Miscellaneous credit/debit cards seized from **Solomon Esekheigbe;**

Miscellaneous credit cards/apple card seized from **Solomon Esekheigbe;**

$8,205.00 seized from Bank of America account xxxxxxxx7150 seized from **Isaac Asare;**

$34.69 seized from Regions Bank account xxxxx6666 seized from **Isaac Asare;**

$9.11 seized from Regions Bank account xxxxx6658 seized from **Isaac Asare;**

$854,213.57 seized from JPMorgan Chase account ending in 5233 seized from **Damilola Kumapayi**;

$880.91 seized from Wells Fargo Bank account xxxxxx2483 seized from **Benedicta Atakere;**

$3515 USC seized from the vehicle of **Chidindu Okeke**, located at 3422 Karleigh Way, Richmond, Texas

$560.62 seized from Wells Fargo Bank account xxxxxx0966 seized from **Sandra Iribhogbe Popnen**

$8.51 seized from Prosperity Bank account seized from **Chidindu Okeke**

$1,247.97 seized from Prosperity Bank account xxxx3231 seized from **Ngozi Okeke**

$25.35 seized from Navy Federal Credit Union account number xxx1976 seized from **Chidindu Okeke**

$14,499.55 seized from Navy Federal Credit Union account number xxx0486 seized from **Chidindu Okeke**

3.      Pursuant to 21 U.S.C. § 853(p), as incorporated by reference by 18 U.S.C. § 982(b), if any of the forfeitable property, or any portion thereof, as a result of any act or omission of the defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third party;

c.      has been placed beyond the jurisdiction of the court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be divided without difficulty,

it is the intent of the United States to seek the forfeiture of other property of the defendants up to the value of the above-described forfeitable properties, including, but not limited to, any identifiable property in the name of the defendants.

4.      By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c).

All pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 982(a)(2)(A) and 28 U.S.C. § 2461(c), and the procedures set forth at 21 U.S.C. § 853, as made applicable through 18 U.S.C. § 982(b)(1).

A TRUE BILL

_____
GRAND JURY FOREPERSON

DAMIEN M. DIGGS
UNITED STATES ATTORNEY

_____          _____
HEATHER RATTAN                                                 Date
ANAND VARADARAJAN
ASSISTANT UNITED STATES ATTORNEYS

Second Superseding Indictment
Page 21 of 21

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | **SEALED** |
| | § | |
| v. | § | No. 4:21-CR 253 |
| | § | Judge Mazzant |
| KINGSLEY ITA (1) | § | |
|   a.k.a. "Baron" "Sifk" | § | |
| IRABOR FATARR MUSA (2) | § | |
|   a.k.a. "Fatai" "Head JJ" | § | |
| ██████████████ | § | |
| ██████████████ | § | |
| ██████████ | § | |
| SOLOMON ESEKHEIGBE (5) | § | |
| SANDRA IRIBHOGBE POPNEN (6) | § | |
|   a.k.a. "General" "Santos" | § | |
| EDGAL IRIBHOGBE (7) | § | |
|   a.k.a. "Oseme" | § | |
| DAMILOLA KUMAPAYI (8) | § | |
|   a.k.a. "Luke Morris" "Lil unc unc" | § | |
| ██████████████ | § | |
| EHIEDU ONYEAGWU (10) | § | |
|   a.k.a. "Young" | § | |
| SEGUN ADEOYE (13) | § | |
| CHIDINDU OKEKE (14) | § | |
|   a.k.a. "Steve" "Gerard" | § | |
| NGOZI OKEKE (15) | § | |
| ██████████████ | § | |
| NOSOREGBE ASEMOTA (17) | § | |
|   a.k.a. "Patrick Asemota" | § | |
| CHIGOZI EKWENUGO (18) | § | |
|   a.k.a. "Gozie" | § | |
| OSARETIN EGHAGHE (22) | § | |
|   a.k.a. "Biggie" | § | |
| EJIRO OHWOVORIOLE (23) | § | |
| ISAAC ASARE (24) | § | |
|   a.k.a. "Asarko" | § | |
| GOLD UDE (26) | § | |

HENRIETHA OZIEGBE (27)                         §
  a.k.a. "Henrientha" "Hetty"              §
CHIAGOZIEM KIZITO OKEKE (29)          §
  a.k.a. "Alex"                                      §
EBERE PETER OMEIRI (30)                    §

## <u>NOTICE OF PENALTY</u>

### <u>Count One</u>

<u>Violation</u>:    18 U.S.C. § 1349, 1343
                (Conspiracy to Commit Wire Fraud)

<u>Penalty</u>:    Imprisonment for a term not more than 20 years, a fine not to exceed $250,000.00, or both; if the violation affected a financial institution, then imprisonment for a term not more than 30 years, a fine not to exceed $1,000,000.00; or both imprisonment and a fine; a term of supervised release of not more than 5 years.

<u>Special</u>
<u>Assessment</u>:  $100.00

### <u>Count Two</u>

<u>Violation</u>:    18 U.S.C. § 1956(h)
                (Conspiracy to Commit Money Laundering)

<u>Penalty</u>:    Imprisonment for a term not more than 20 years; a fine not to exceed $500,000 or twice the value of the property involved in the transaction, whichever is greater; or both imprisonment and fine; a term of supervised release of not more than 3 years.

<u>Special</u>
<u>Assessment</u>:  $100.00