# United States District Court

**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| UNITED STATES | § | |
| | § | |
| v. | § | No. 4:21-CR-253(13) |
| | § | Judge Mazzant |
| SEGUN ADEOYE | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant Segun Adeoye's Motion for Severance (Dkt. #453) and Defendant Segun Adeoye's Motion for Relief from Rule 8 Misjoinder and Duplicity in Superseding Indictment and for Renewal of Request for Relief by Rule 14 Severance (Dkt. #1046). Having considered the motions and the relevant pleadings, the Court finds that both motions should be **DENIED.**

## BACKGROUND

The United States has brought charges against Segun Adeoye ("Adeoye") and others that they did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1343 and 18 U.S.C. § 1956(h), for money laundering and wire fraud (Dkt. #862 at pp. 2–3, 12–13).

Within the alleged scheme, the United States claims that on or about May 15, 2020, Edgal Iribhogbe ("Iribhogbe") withdrew three cashier's checks payable to Adeoye totaling approximately $43,000 (Dkt. 862 at p. 8). Subsequently, on or about May 27, 2020, Adeoye allegedly wired $43,000 from his Chase Bank account ending in 0603 to a Japanese bank account in the name of Kyokuyo Co. Ltd. (Dkt. #862 at p. 8).

Adeoye claims that he possesses a letter from Iribhogbe (the "Iribhogbe Letter") that states Adeoye is innocent (Dkt. #502, Exhibit 1). Further, although not indicated by affidavit, Adeoye

claims that Soloman Esekheigbe ("Esekheigbe") would testify that Iribhogbe, while in prison, told Esekheigbe that Adeoye did not know of the illicit nature of the funds he transferred and thought that the transfer was legitimate (Dkt. #453 at p. 5).

Further, the United States claims that the defendants, including Adeoye, used healthcare businesses to further their fraud and money laundering scheme, "such as medical clinics that fraudulently prescribed medications and narcotics to patients" (Dkt. 862 at p. 10). In support of this claim, the United States identifies Adeoye's activities (Dkt. 862 at p. 10). Adeoye operated a family medicine clinic in the Houston Area (Dkt. 862 at p. 10). However, he allegedly wrote at least 5,500 controlled substance prescriptions, including opiates, between 2019 and 2021 (Dkt. 862 at p. 10). His alleged rate of prescription was approximately 400% greater than the average typical family medicine doctor and approximately 140% greater than the typical pain management specialist (Dkt. 862 at p. 10).

Adeoye requests that the Court sever him from this case on the basis of misjoinder under Federal Rule of Criminal Procedure 8(b) or unfair prejudice under Federal Rule of Criminal Procedure 14 (Dkt. #453; Dkt. #1046).[1] Adeoye further claims that the Second Superseding Indictment is duplicitous (Dkt. #1046). The United States opposes Adeoye's motion and filed responses (Dkt. #498; Dkt. #1063). Adeoye filed a reply only relating to his Rule 14 argument (Dkt. #502).

## LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) provides defendants may be tried together "if they are alleged to have participated in the same act or transaction, or in the same series of acts or

---

[1] Adeoye is a pro se defendant in this case and has been since August 24, 2023 (Dkt. #787).

transactions, constituting an offense or offenses . . ." FED. R. CRIM. P. 8(b). "The propriety of joinder under Rule 8 is determined by the initial allegations of the indictment, which are accepted as true absent arguments of prosecutorial misconduct." *United States v. Harrelson*, 754 F.2d 1153, 1176 (5th Cir. 1985). "Whether the counts of an indictment fulfill the 'same series' requirement is determined by examining 'the relatedness of the facts underlying each offense.'" *Id.* at 1176 (quoting *United States v. Gentile*, 495 F.2d 626, 630 (5th Cir. 1974)). "[W]hen the facts underlying each offense are so closely connected that proof of such facts is necessary to establish each offense, joinder of defendants . . . is proper." *Id.* at 1176–77.

Federal Rule of Criminal Procedure 14(a) may be used to provide relief from prejudicial joinder:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

FED. R. CRIM. P. 14(a). "Severance is required only in cases of compelling prejudice." *United States v. Rice*, 607 F.3d 133, 142 (5th Cir. 2010) (citation and quotation omitted). Severance under Rule 14(a) is only appropriate "if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Mutually antagonistic defenses are not prejudicial *per se*." *Id.* at 538.

## ANALYSIS

Adeoye raises three issues in the present motion. First, he claims the United States improperly joined him to this case pursuant to Federal Rule of Criminal Procedure 8(b) (Dkt. #1046 at pp. 4–13). Second, he claims that the Court should sever him from this case based on Federal

Rule of Criminal Procedure 14(a) (Dkt. #453; Dkt. #1046 at pp. 13–15). Finally, Adeoye claims that the Second Superseding Indictment is duplicitous (Dkt. #1046 at pp. 1, 10)

## I.      Misjoinder Has Not Occurred in Violation of Rule 8(b)

Adeoye argues that he is improperly joined in the present case (Dkt. #1046). In response, the United States claims that "[t]here is no question that Adeoye is alleged to 'have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses' within the meaning of Fed. R. Crim. P. 8(b)" (Dkt. #1063 at p. 4).

Importantly, the Second Superseding Indictment alleges that the defendants, including Adeoye, "not only coordinated how to receive money from the victims, but also how to disguise, disburse, and launder that money once victims were defrauded" (Dkt. #862 ¶ 2). The United States maintains this allegation even though the defendants "used a multitude of fraudulent schemes to unlawfully obtain money from their victims" (Dkt. #862 ¶ 2).

Joinder in the context of conspiracy is appropriate where all transactions constitute part of a single criminal enterprise. *See United States v. Meridia*, 765 F.2d 1205, 1219 (5th Cir. 1985) ("joinder was proper in this case" because "[a]ll of the diverse transactions were part of a single criminal enterprise designed to produce illicit profits from the importation, manufacture, and distribution of controlled substances"); *Gordon v. United States*, 438 F.2d 858, 878–79 (5th Cir. 1971) (finding joinder is permitted to try separate events together when the substantive offenses alleged in the indictment fall within the scope of the conspiracy); *United States v. Berganza Espinoza*, No. 4:19-cr-00228, 2021 WL 4941073, at *3 (E.D. Tex. Oct. 22, 2021) (finding that joinder under Rule 8(b) was appropriate because "[t]he initial allegations describe a conspiracy

between Defendants that constitute parts of a single criminal enterprise—the Berganza family drug business").

The United States has alleged that each transaction listed in the Second Superseding Indictment constitutes part of a single criminal enterprise, where the enterprise's members "not only coordinated how to receive money from the victims, but also how to disguise, disburse, and launder that money once victims were defrauded" (Dkt. #862 ¶ 2). Therefore, the United States has sufficiently defined how the acts listed in the Second Superseding Indictment occurred in the same series of transactions.

## II.     Severance Is Not Warranted Under Rule 14(a)

Adeoye argues that the Court should sever him from this case because Adeoye will face various forms of prejudice at trial. First, Adeoye claims that he will be deprived of critical exculpatory evidence absent severance (Dkt. #453 at pp. 4–5). Second, Adeoye argues that he will face prejudice from the spillover effect from evidence relating to other co-defendants' conduct absent severance (Dkt. #453 at pp. 5–9). Third, Adeoye argues that a joint trial will result in inconsistent and antagonistic defenses that would prejudice him (Dkt. #453 at pp. 9–11). Finally, Adeoye claims that a limiting instruction will be ineffective to cure any unfair prejudice against him (Dkt. #453 at pp. 11–12).

### A.     Deprivation of Exculpatory Evidence

In his first argument relating to Rule 14(a), Adeoye argues that he will not receive critical exculpatory evidence if the Court does not sever him from this case (Dkt. #453 at p. 4–5; Dkt. #502 at pp. 1–2). He claims that this evidence consists of (1) Esekheigbe's testimony that Iribhogbe said Adeoye is innocent, and (2) the Iribhogbe Letter (Dkt. #453 at p. 5; Dkt. #502, Exhibit 1).

5

### 1.  Esekheigbe's Testimony

First, Adeoye argues that if tried together, he would not be able to compel Esekheigbe to testify (Dkt. #453 at p. 5). However, he claims that Esekheigbe would testify on Adeoye's behalf if they are tried separately (Dkt. #453 at p. 5). In response, the United States argues that any testimony from Esekheigbe would be inadmissible hearsay regardless of whether he testifies in a separate trial (Dkt. #498 at pp. 4–6). In reply, Adeoye claims that testimony from Esekheigbe would be admissible under the statement against interest hearsay exception (Dkt. #502 at pp. 1–2).

On October 19, 2023, Esekheigbe pleaded guilty to the charges against him (Dkt. #915; Dkt. #916; Dkt. #917; Dkt. #995). This development means that Adeoye and Esekheigbe will not be tried jointly regardless of whether the Court grants Adeoye's motion for severance.

The admissibility of Esekheigbe's potential testimony does not depend on whether the Court grants Adeoye's motion for severance. Exculpatory evidence impacts the severance analysis where it would be available to the defendant if tried alone but would be unavailable in a joint trial. *Zafiro*, 506 U.S. at 539. The question of whether Esekheigbe may assert his right against self-incrimination does not depend on whether the Court grants Adeoye's motion for severance. *See In re Bryan*, 645 F.2d 331, 333 (5th Cir. 1981). Further, whether Esekheigbe's testimony would constitute inadmissible hearsay does not depend on whether the Court grants Adeoye's motion for severance. *See* FED. R. EVID. 801, 804(a)(1). Therefore, Adeoye has not shown that he would not receive Esekheigbe's testimony absent severance.

### 2. Iribhogbe Letter

Adeoye claims that the Iribhogbe Letter constitutes exculpatory evidence that "solidifies Adeoye's severance claim" (Dkt. #502 at p. 1). The United States did not address the Iribhogbe Letter because it did not file a sur-reply and Adeoye first presented the letter in his reply (*See* Dkt. #502, Exhibit 1).

The Iribhogbe Letter does not impact whether the Court should grant Adeoye's request for severance. Again, exculpatory evidence impacts the severance analysis where it would be available to the defendant if tried alone but would be unavailable in a joint trial. *Zafiro*, 506 U.S. at 539. The Iribhogbe Letter will be equally available regardless of whether Adeoye is tried alone or in a joint trial (*See* Dkt. #502, Exhibit 1). Similarly, the Iribhogbe Letter does not suggest that Iribhogbe would be unavailable to testify in a joint trial, but available for a trial of Adeoye alone (*See* Dkt. #502, Exhibit 1). For the reasons discussed above, Adeoye has not shown that he would not receive the benefit of the Iribhogbe Letter absent severance.

### B. Prejudicial Spillover Effect

Adeoye complains that a joint trial would prejudice him because:

> (1) only a de minimis portion of the evidence presented during the trial will relate directly to him; (2) the evidence relevant only to the other codefendants may create a background of egregious conduct against which the jury may react negatively towards the lot; and (3) the jury will be overly prone to find him guilty by association.

(Dkt. #453 at pp. 6–7). The United States responds that the mere allegation of a spillover effect is insufficient to warrant severance (Dkt. #498 at pp. 7–9). The United States points out that the Fifth Circuit has affirmed severance denials where the defendant "merely complained broadly of the volume of evidence, the disparity of evidence between defendants, and a generalized spillover

effect, but did not point to any specific prejudice resulting from his combined trial" (Dkt. #498 at p. 8) (quoting *United States v. Stalnaker*, 571 F.3d 428, 435 (5th Cir. 2009)).

"There is a strong presumption 'that [d]efendants who are indicted together should generally be tried together, particularly in conspiracy cases.'" *United States v. Evans*, 753 F. App'x 295, 297 (5th Cir. 2018) (quoting *United States v. Ledezma-Cepeda*, 894 F.3d 686, 690 (5th Cir. 2018)). This presumption exists because "joint trials 'promote efficiency' and protect against the 'inequity of inconsistent verdicts.'" *Id.* (quoting *Zafiro*, 506 U.S. at 537). "Severance is required on the basis of disparity in the evidence only in the most extreme cases." *United States v. Chapman*, 851 F.3d 363, 380 (5th Cir. 2017) (quoting *United States v. Owen*, 683 F.3d 93, 100 (5th Cir. 2012)). "Generic allegations of prejudice will not suffice, for neither a quantitative disparity in the evidence nor the presence of a spillover effect requires a severance." *Ledezma-Cepeda*, 894 F.3d at 690 (internal citations omitted).

Adeoye's claims that the disparity in the evidence will result in prejudice against him are generic and do not warrant severance. Adeoye complains that in a large, international conspiracy, the allegation against him "only involves one bank and one transaction" (Dkt. 498 at p. 8). However, the alleged conspiracy involves two broad steps: (1) using fraudulent schemes to obtain money from victims and (2) transferring the money to various bank accounts (often internationally) to hide its origins (Dkt. #862 ¶ 4). Adeoye's role in transferring $43,000 to a Japanese bank account lies within the second step of the alleged scheme (*See* Dkt. #862 ¶ 7(a)).[2] Maintaining the joint case will promote efficiency by retaining the case in one action and contextualizing Adeoye's role in the

---

[2] The United State also now alleges that Adeoye used his family medicine clinic to further the fraud and money laundering scheme (Dkt. #862 ¶ 10).

larger conspiracy for the jury. Thus, the potential of prejudice from the spillover effect does not warrant severance.

### C.      Antagonistic and Inconsistent Defenses

Adeoye claims that a joint trial will result in antagonistic and inconsistent defenses between him and his co-defendants (Dkt. #453 at pp. 9–11). His defense is that he had no knowledge of the conspiracies (Dkt. #453 at p. 10). Adeoye claims that his defense will be antagonistic and inconsistent with Iribhogbe's potential defense where "[Iribhogbe] told the truth to Adeoye[,] but [Iribhogbe] did not know the truth himself" (Dkt. #453 at p. 10). However, Adeoye only speculates as to what Iribhogbe's defense will be because "Adeoye is not privy to Iribhogbe's defense" (Dkt. #453 at p. 10).

In response, the United States argues that both Adeoye's defense and Iribhogbe's potential defense are not actually inconsistent (Dkt. 498 at pp. 9–10). Additionally, the United States claims that speculation of what Iribhogbe's defense might be is insufficient to support severance (Dkt. #498 at p. 10).

Severance would only be appropriate if a "serious risk [existed] that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Without evidence of what defenses both a defendant and one or more co-defendants will use, "any argument that the defenses are mutually antagonistic to the point of warranting severance cannot be more than mere speculation." United States v. Valdez, No. B-06-477-05, 2006 WL 2091006, at *3 (S.D. Tex. July 25, 2006). Without such evidence, "the Court has no basis upon which to evaluate such a claim" of mutually antagonistic defenses. Id.

Adeoye's defense and Iribhogbe's potential defense may coexist without any inconsistency. A jury may believe both defenses and determine that both Adeoye and Iribhogbe did not know of the alleged conspiracy (*See* Dkt. #453 at pp. 9–11). Additionally, Adeoye speculates as to what Iribhogbe's defense will be without any evidence (Dkt. #453 at p. 10). This speculation is insufficient to warrant severance. *Valdez*, 2006 WL 2091006, at *3.

## D.    Curative Effect of a Limiting Instruction

Next, Adeoye claims that a limiting instruction would be insufficient to limit the prejudice that Adeoye will face (Dkt. #453 at pp. 11–12). He argues that this is a complex case with a high volume of inflammatory evidence, very little of which applies to Adeoye (Dkt. #453 at pp. 11–12). "Undeniably, the government's evidence against the defendants will paint a picture of an international criminal conspiracy clothed in secrecy, sophistication, and, in some cases, violent coercion" (Dkt. #453 at p. 12). "Taken as a whole, a limiting instruction is insufficient to cure any prejudice against Dr. Adeoye" (Dkt. #453 at p. 12). The United States did not respond to this argument.

Even assuming Adeoye would experience substantial prejudice, he has not shown that a limiting instruction would not cure said prejudice. A court may provide limiting instructions to cure instances of prejudice that a defendant may experience. *Ledzema-Cepeda*, 894 F. 3d at 690. "[I]t is 'generally presumed that juries follow the instructions given to them by the district court' and are capable of 'compartmentalizing the evidence against each defendant.'" *Id.* (internal citations omitted). "At bottom, [Adeoye's argument is based] on no more than a discrepancy in the quantity (rather than quality) of crimes and general 'spillover' concerns—precisely the type of codefendant evidence we presume limiting instructions can cure." *Id.* at 692.

### III.     Adeoye Has Not Made an Argument Regarding Duplicity

Adeoye argues that "the duplicity created will blur the intersection of the matrixes of offense and punishment, and the basis for conviction" (Dkt. #1046 at p. 10). However, Adeoye never explains how any portion of the Second Superseding Indictment is duplicitous. The Court assumes that Adeoye argues that the inclusion of multiple means that may have been used to complete a single offense is duplicitous (Dkt. #862 ¶¶ 7(a), 10).

In response, the United States claims that Adeoye "makes no clear argument explaining how the principle [of duplicity] applies in this case" (Dkt. #1063 at p. 5). Further, the United States notes that "[i]t is not duplicitous to allege in one count that multiple means may have been used to commit a single offense" (Dkt. #1063 at p. 5).

"Duplicity occurs when a single count alleges multiple offenses." *United States v. Sanjar*, 876 F.3d 725, 737 (5th Cir. 2017). "Even if an indictment is duplicitous, a defendant must be prejudiced to receive relief." *United States v. Miller*, 520 F.3d 504, 512 (5th Cir. 2008). "That an indictment alleges more than one means by which conspirators 'sought to accomplish [a] scheme does not render it duplicitous.'" *United States v. Mauskar*, 557 F.3d 219, 226 (5th Cir. 2009) (quoting *United States v. McDermot*, No. 93–3603, 1995 WL 371036, at *4 (5th Cir. June 5, 1995)).

The inclusion of healthcare fraud and foreign wire transfers both as a means to accomplish the same charge is not duplicitous. *See Mauskar*, 557 F.3d at 226. Therefore, the Second Superseding Indictment is not duplicitous.

### CONCLUSION

It is therefore **ORDERED** that Defendant Segun Adeoye's Motion for Severance (Dkt. #453) is hereby **DENIED.**

11

It is further **ORDERED** that Defendant Segun Adeoye's Motion for Relief from Rule 8 Misjoinder and Duplicity in Superseding Indictment and for Renewal of Request for Relief by Rule 14 Severance (Dkt. #1046) is hereby **DENIED.**

**IT IS SO ORDERED.**

**SIGNED this 24th day of January, 2024.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE